Jasen, J.
In the aftermath of a barroom brawl in Queens in March of 1970, Leonard Wilson, 24 years old, lay dead of two stab wounds to the chest; The defendant, William Stridiron, a participant, then 17 years of age, was charged with the crime and indicted for manslaughter in the first degree.
After trial before a jury in Supreme Court, Queens County, the defendant was convicted of manslaughter in the second degree and sentenced to an indeterminate term of imprisonment with a maximum of 10 years. The Appellate Division unanimously affirmed the conviction and the appeal is before us by leave of a Judge of our court.
At the trial it was established that on the evening of March 28, 1970, the defendant (William) was at “ McCabes Crog and Crub ” in Queens. Three other youths, apparently known to him, entered. Discussion ensued about a coat belonging to defendant and allegedly stolen by the trio. William indicated his desire to drop the subject, but the decedent, Leonard “ Topper ” Wilson (Topper), refused. William and Topper argued. William drew a closed knife. Topper punched him in the face. William opened the knife, leaped at Topper and “ swung ” the knife at him. There was blood on the knife
_-— *291 and the floor. Topper attempted to hit William with á chair and William continued to stab at him with, the knife. Topper then reached for a pool cue and struck William, who, brandishing the knife, chased Topper out of the bár. The deceased’s body was found in a vacant lot nearby. Police officers arrived and arrested the defendant. At the. police station, William acknowledged that he had a knife and that he might have stabbed someone. The defendant did not testify. His mother and her companion, who were in the bar at the time, testified that two youths, Basden and Topper, argued with William, that Topper punched William and that Basden and Topper struck William with pool cues. Neither saw William use a knife.
At trial, the" defendant sought to cross-examine a witness (Basden) for the People to show that the witness was then incarcerated at Biker’s Island on robbery'charges. The cross-examination was curtailed by the court and the defendant alleges a denial of his Sixth and Fourteenth Amendment right to confront a witness against him.
Cross-examination as to a witness’ residence is permissible to place him in his proper setting (Alford v. United States, 282 U. S. 687, 693) and is embraced within the Sixth and Fourteenth Amendment right of an accused to, confront the witnesses against him. (Smith v. Illinois, 390 U. S. 129, 133.) If the witness is in custody, such cross-examination may tend to show that the witness ’ testimony was affected by fear or promise of favor growing out of his detention, thus better enabling the trier of fact to assess credibility and the weight to be accorded the witness’ testimony. Although it was error for the trial court to restrict cross-examination on this point, on the facts of this case, the error may be deemed harmless beyond a reasonable doubt. (Chapman v. California, 386 U. S. 18, 21-24.)
In Smith v. Illinois (supra, at p. 130), the only real question was the relative credibility of the petitioner and the prosecution witness whose cross-examination was curtailed. Here, two eyewitnesses testified for the People — Basden and Gatewood.— both of whom related the same general account. And, unlike the situations in Alford and Smith, cross-examination as to the witness ’ “ residence ” was not cut off in limi/ne. It was elicited on at least one occasion, and repeated by defense counsel, that the witness Basden had been interrogated by an Assistant Dis *292 trict Attorney at Biker’s Island. The inference of incarceration was there for the jury to draw.
It is also contended that guilt was not proven beyond a reasonable doubt. We find there was ample evidence, if believed, from which the jury was privileged to conclude, beyond a reasonable doubt, that the defendant recklessly caused the death of Leonard “ Topper ” Wilson. There also was ample evidence from which the jury could have concluded beyond a reasonable doubt that the defendant was not justified in defending himself by the use of deadly force. There was no showing that deadly physical force was about to be used on him and, moreovér, he did not retreat before resorting to deadly force himself. (Penal Law, § 35.15, subd. 2, par. [a].) (In fact, brand-' ishing a knife, he chased the decedent out of the bar.) As there was no evidence that the two companions of the decedent were about to use deadly force on the defendant, he was not entitled to a charge to the effect that the use of deadly physical force would be justified if he reasonably believed that the deceased or others acting in concert with him were about to inflict grievous bodily harm.
It is next urged that defendant was denied a fair trial when the District Attorney failed to call certain eyewitnesses at trial and suppressed evidence favorable to the defense. We begin with the proposition that the prosecutor has the duty to disclose information in his possession that is favorable to an accused and material to guilt or punishment. (Brady v. Maryland, 373 U. S. 83, 87.) But there is no duty on the prosecutor to call at trial every witness to a crime or to make a complete and detailed accounting to the defense of all law enforcement investigatory work. (Moore v. Illinois, 408 U. S. 786, 795; People v. Fein, 18 N Y 2d 162,172, opp. dsmd. 385 U. S. 649.) And there may be situations in which a prosecutor, in his discretion, may fairly keep to himself knowledge of available testimony which he views as mistaken or false. (People v. Fein, supra, at p. 172; United States ex rel. Thompson v. Dye, 221 F. 2d 763, 769 [3d Cir., Hastie, J., concurring].)
There was then no deprivation of due process in the District Attorney’s failure to call certain witnesses to the crime. Nor was their evidence suppressed. Even assuming that their evidence was favorable to the defendant, and there is no showing *293 to that effect, the names and addresses of thése persons, and statements made by them to the authorities, were furnished tó defense counsel at the close of the People’s case. Perhaps this information should have been furnished sooner. But even so, once having received it, counsel chose not to call any of these persons as witnesses for the defense. In a word, there was no prejudice and no suppression of evidence.*
We have considered defendant’s other points for reversal and found them to be without substance.
The order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Breitel, Gabrielli, Jones and Wachtler concur.
Order affirmed.

 Nor was it error to refuse to charge that the jury could draw an unfavorable inference from the fact that the prosecutor failed to call certain of these eyewitnesses to testify at trial. The prosecutor did not call them since in his view their statements were confused and valueless. No unfavorable inference may arise therefrom. (Richardson, Evidence [9th ed.], § 92.) Moreover, these witnesses were equally accessible to the defense.