■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v YOHURA JONES, Appellant.—Judgment, Supreme Court, Bronx County, rendered March 18, 1976, convicting defendant of criminal sale of a controlled substance in the third degree (three counts) and of criminal impersonation, and sentencing him to three concurrent indeterminate terms of eight and one-third years to life, and a one-year term to run concurrently, modified, as a matter of discretion in the interest of justice, to the extent of reducing the indeterminate sentences to three years to life and, except, as thus modified, affirmed. Although we affirm the conviction we think that it was improper for the prosecutor in summation to state that the past records of the testifying police officers were matters of public record when, in fact, defense counsel was not permitted examination of these records and the District Attorney objected to such an inspection, even by the court, *in camera.* (In point of fact, the court did inspect, *in camera,* the personnel records but apparently found no evidence of misconduct.) The prosecutor also commented that the defense attorney had a right to subpoena and examine all of the officers' personnel records and that he had the opportunity to cross-examine the undercover officers as to any immoral or illegal acts which they might have committed. The effect of these comments was to convey to the jury the impression that there must have been no instances of misconduct since defense counsel would have pursued the matter had he discovered any in his examination of the records. Although there were other excesses in the prosecutor's summation, it is obvious that they were prompted by highly inflammatory statements in defendant's summation that the officers had intentionally framed him and made him a "fall-guy to cover other narcotics transactions." We are also of the view that exclusion of the public from the courtroom during the testimony of one of the undercover officers was made on the basis of an inadequate record, but we do not believe that such a circumscribed exclusion seriously deprived defendant of the benefit of a public trial. (See *United States ex rel. Lloyd v Vincent,* 520 F2d 1272, 1274; *People v Garcia,* 51 AD2d 329, 331.) In so holding we do not intimate that the absence of prejudice is a factor in the consideration of whether there has been a constitutional deprivation. The right to a public trial stands on its own. But it is not absolute. The exclusion here was of a limited nature, involving only one witness. It was made on the mistaken but good faith assumption by the court that the officer, who was, according to the prosecutor, "in fear of his life", was still in an undercover assignment. Moreover, we think it is significant that defense counsel never renewed his request for a hearing or asked that the public be returned to the courtroom once the fact was disclosed that the undercover officer had been transferred to a uniformed assignment. This disclosure came in the first few questions put to the officer. In short, defense counsel, having made his *pro forma* objection for the appellate record, was content to let the matter rest. It should be noted that the other undercover officer testified publicly. Finally, under the circumstances, the imposition of a sentence of eight and one-third years to life for three sales of relatively small quantities of narcotics for a total sum

of $142 was excessive. As an exercise of discretion in the interest of justice we therefore modify the sentence to three years to life. Concur—Kupferman, J. P., Silverman, Fein and Sullivan, JJ.; Sandler, J., dissents in a memorandum as follows: In my opinion, the closing of the courtroom during the testimony of one of the two undercover officers in this narcotics case under the circumstances revealed violated the defendant's right to a public trial under the Sixth Amendment to the Constitution of the United States and requires that the conviction be reversed. Just prior to the testimony of Officer Brown, one of the two narcotic undercover officers whose testimony was central to the prosecution of this case, the Assistant District Attorney requested that the courtroom be closed during his testimony because the officer was in "fear of his life." The defense counsel objected and requested a hearing. The court took judicial notice that the "nature of the work of the undercover agent in the City of New York involved with narcotics is such to place him in jeopardy every day he is on the streets", denied a hearing on the issue, and closed the courtroom. It developed during the testimony of Officer Brown that he was no longer an undercover officer, that he was then a uniformed officer and had been one for some six months prior to his testifying, and that he was assigned to a precinct distant from the area in which the alleged crime had occurred. That the closing of the courtroom under these circumstances was an abuse of discretion in violation of the defendant's constitutional right to a public trial seems to me obvious. (See *People v Hinton,* 31 NY2d 71; *People v Morales,* 53 AD2d 517; *People v Richards,* 48 AD2d 792.) I know of no authority that comes close to supporting as an appropriate exercise of discretion the judicial action that was here taken. It may well be that if a hearing had been held, facts might have been developed that would have justified the action that was taken. On this record, the closing of the courtroom was a palpable error. The question presented is whether such error requires reversal of the conviction in a case in which, as I am inclined to agree, the evidence of guilt is substantial and other trial errors would not by themselves justify reversal. This particular issue appears never to have been squarely decided by an appellate court. It is true that in *People v Richards (supra),* the exclusion of the public during the testimony of an undercover officer was described as "reversible error" even though it was established that the officer was still engaged in an undercover capacity in the same "general area." However, the opinion, after describing other trial errors, closes with the comment that (p 793): "in view of the closeness of the case, a right sense of justice dictates that a retrial should be granted." The two principal cases in the general area of our concern seem to me to be *People v Hinton (supra)* and *United States ex rel. Lloyd v Vincent* (520 F2d 1272, cert den 423 US 937). Neither discuss the legal consequences that would follow a ruling that a courtroom had been closed unjustifiably during the testimony of a witness. Nevertheless, the opinions in both cases, and particularly that of the United States Court of Appeals in *United States ex rel. Lloyd v Vincent (supra),* seem to me to support at least by implication the view that a reversal must follow. In both cases it was held that the defendant's claim to a public trial was subject to the discretionary power of the trial court under appropriate circumstances, and that the closing of the courtroom during the testimony of an undercover narcotics officer, still engaged in that kind of work, was an appropriate exercise of discretion. In *Hinton,* the court emphasized that the discretion should be "sparingly exercised and then, only when unusual circumstances necessitate it" (31 NY2d 71, 76, *supra).* And, in *Lloyd,* the court expressed its strong preference for an evidentiary hearing prior to any such determi-

nation, and stressed the fact that the trial court had given the defendant and his counsel an opportunity to indicate any particular person they wished to have present in the court. What seems to me of present interest is that in neither opinion is there any intimation that if it had been concluded that judicial discretion had been improvidently exercised, the conviction might nonetheless have been sustained on the view that the case was a strong one, or that the error was not prejudicial. The implication that an unjustifiable closing of the courtroom would require a conviction to be vacated without regard to other error or the strength of the case seems to me inherent in both opinions and particularly in that of the court in the *Lloyd* case, although this inference, it must be acknowledged, is open to reasonable disagreement. The legal problem presented has some special aspects. It would be an unusual case in which the closing of the courtroom during the testimony of a witness would be likely to have any impact whatever upon the outcome of the trial. The constitutional guarantee of a public trial was clearly designed to serve broad purposes in addition to protecting the rights of an individual defendant. The constitutional safeguard cannot be effectively enforced if appellate review of discretion in this area is limited by the requirement that there be a finding of actual prejudice to the defendant or that there be other trial errors that would independently mandate reversal. Although judicial reluctance to reverse convictions for reasons unrelated to the guilt of the defendant is understandable, the standard implicit in the opinion of the court opens the way, in my opinion, to a disturbing erosion of an important constitutional right. Accordingly, the judgment of conviction should be reversed and the case remanded for a new trial.