■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS RAMIREZ, Appellant.—Judgment, Supreme Court, Bronx County, dated May 19, 1976, convicting defendant, after jury trial, of the crime of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41) and sentencing him thereon, is reversed, on the law, and a new trial ordered. Defendant was originally sentenced to an indeterminate term of imprisonment of six years to life. On November 21, 1979, in accordance with the recent amendments of the drug laws (Penal Law, § 60.09, subd b, par [ii]; L 1979, ch 410, § 3), defendant was resentenced to a term of three years to life, *nunc pro tunc* as of the time of the original sentence. With the consent of both sides, we consider the appeal from the judgment, as so modified. Defendant was charged with a sale of cocaine to an undercover police officer in a certain apartment on November 8, 1973. There was present at the transaction a female informant. At the trial, the informant's identity was disclosed to defendant's attorney and defendant's attorney was given an opportunity to interview her, which he did. But during most of the time, even when under subpoena by the defendant, the informant remained in the District Attorney's office. The District Attorney stated that he did not intend to call her as a witness. The defendant did not call her. The defendant requested the court to give an unfavorable inference charge (referred to as a charge of an inference favorable to defendant) because of the District Attorney's failure to call the informant as a witness. The court refused. We think this refusal was error. While it is understandable that the District Attorney might be reluctant to call an informant, and the informant might be even more reluctant to testify, those are circumstances which the jury should have been left to consider in determining whether to draw an unfavorable inference from the District Attorney's failure to call the informant. But the jury should have been told that if they were not satisfied with the reasons for not calling her, they could draw an inference unfavorable to the People. This was after all a case in which there was no longer any problem about revealing the informant's identity; and the informant was available, being right in the courthouse. "In the case of noncumulative testimony, the defendant cannot be deprived * * * of his right, on request, to a proper charge as to the inference which might be drawn by the jury from the failure of the prosecution to produce the witness, by the prosecution's tender of the witness in the courtroom, to be interviewed by defense counsel and, if thereafter desired, to be called to the stand as a witness for the defense. Although in a literal sense such a witness could be said to be available to both parties, he would be expected to be favorable to the prosecution and the hostile to the defense." *(People v Brown,* 34 NY2d 658, 660.) Whether the failure to give such a charge in an appropriate case requires reversal of

the conviction depends on the facts of each case. In the present case, we think the evidence against the defendant was not so overwhelming as to justify us in overlooking the error. Concur—Sandler, J. P., Bloom, Markewich and Silverman, JJ.

Lupiano, J., dissents in a memorandum as follows: On November 8, 1973, at 3:30 P.M., undercover Officer Castro and two confidential informants, one female and the other male, went to 886 Beck Street to purchase cocaine. Castro and the female informant, Concetta Santiago, went to Apartment 1A where, after a 30-year-old female answered the door, Concetta introduced Castro to a male she called "Poppy" and who was later indentified by Castro as defendant. Poppy took a plastic bag containing one-half ounce of cocaine from a refrigerator and gave it to Castro in exchange for $300. After this transaction, Castro and Concetta went to Castro's car. Castro had never met Concetta or defendant before November 8, 1973. On March 15, 1974, defendant was arrested for the November 8, 1973 cocaine sale. The undercover team did not have information concerning defendant prior to November 8, 1973, and this was the first time the confidential informants assisted the police in a purchase. The above narration of facts was presented at trial by Officer Castro and Sergeant Dunleavy of the undercover team. Defendant's case consisted of the following: testimony from an interpreter of the Bronx District Attorney's office to the effect that "Poppy" is a common Hispanic nickname, testimony from defendant's employer, Mercado, a grocer, to the effect that defendant's hours at the place of employment were from 9:00 A.M. to 6:00 P.M. Monday through Saturday, and that defendant lived in November, 1973 at 966 Southern Boulevard. Defendant admitted that his nickname was "Poppy", but denied, at trial, that he ever met or sold drugs to Castro. He declared that he moved to 966 Southern Boulevard in October, 1973, and produced a lease dated November 1, 1973, enclosed in an envelope postmarked December 13, 1973 for his Southern Boulevard apartment. He stated that he lived with his wife, Nilsa *Mendez,* and three children. The parties stipulated that as of December 12, 1973, the electric bill for Apartment 1A, 886 Beck Street, was paid by the H. R. S. Corporation and that, for about one year, mail for one Jose *Mendez* had been received at that apartment. Officer Castro's identification testimony at trial was clear and unwavering. The jury convicted defendant of criminal sale of a controlled substance in the second degree and he was sentenced to a term of six years to life. On appeal, defendant argues that the prosecutor committed reversible error in compelling defendant during cross-examination to state that the undercover officer was lying, especially as defendant's defense is based on mistaken identification. This instance of improper inquiry was brief and the trial court sustained defense counsel's objection. Viewing this instance of error against the background of the entire record, it is clear that the error was harmless and did not rise to the stature of reversible error mandating a new trial. The key contention of defendant on appeal is that the trial court committed reversible error by refusing to grant defense counsel's request to charge that an unfavorable inference could be drawn from the failure of the People to call to the stand the female confidential informant who witnessed the sale of cocaine to undercover Officer Castro. The People respond that since the prosecutor made this informant available to defense counsel, the trial court acted properly when it denied defense counsel's request for such a charge. There is no error on the trial court's part in so refusing to charge. Prior to the People resting their case, a colloquy ensued between the court, defense counsel and the prosecutor relevant to the fact that the confidential informant Concetta Santiago was

escorted to the court by a police officer for purposes of being made available to defense counsel. Defense counsel indicated his displeasure because the informant expressed a desire not to talk to him. He declared his opinion that a conspiracy existed on the part of the police and the prosecutor to frustrate his examining the informant. This assertion was denied by the prosecutor, who stated that a police officer had volunteered to escort the informant to court because of the officer's awareness of threats to the informant's life. The trial court displayed an acute regard for the defendant's rights and directed that the informant be brought before him. Defendant was removed from the courtroom and no officer was present so that the atmosphere was free from any veiled coercion either from the People or defendant's point of view. The court instructed the informant to speak to defense counsel in the robing room next to the courtroom. The witness expressed her fear when she stated "How do you want me to talk when you walk me right in front of [defendant]?" The court responded that she would, if called to the stand, have to testify in front of the defendant. Further, the court told her that after she talked to defense counsel, she might not be called to take the stand. The witness again expressed her fear, stating: "I don't dare because [defendant] saw me." The court pointed out that as the witness was present before him, either side could call her and he could compel her to testify. The People responded that they would not call the informant and that it was defense counsel's prerogative to call her if he so desired. Defense counsel requested a private interview with the informant and she consented at the urging of the court. After the interview of some 25 minutes duration, the prosecutor and defense counsel appeared before the court. Defense counsel stated that he questioned the witness with an interpreter being present. The prosecutor was not present. After a knock at the door and after the prosecutor opened it and "stuck" his head in, the informant refused to continue with the interview. Defense counsel admitted that he had discussed with the informant the events surrounding November 8, 1973 in the apartment, including, *inter alia,* her knowledge of the location, the persons who were present, what transpired and her involvement and whether she had any cases pending against her. Defense counsel concluded by expressing an intent to subpoena this informant as he had not as yet made a decision as to whether to call her. The prosecutor stated that pursuant to the court's instructions that he be present, he entered the room where defense counsel was to conduct the interview, but his presence was objected to by the latter. Accordingly, the prosecutor extended what defense counsel admitted was the "courtesy" of leaving the room. A court officer was permitted to remain in the room with the informant, the interpreter and the defense counsel. After waiting over 20 minutes, the prosecutor, aware that the understanding was that the participants were to "break" at four o'clock, simply knocked at the door and inquired of defense counsel how much longer he would be. The prosecutor stated that the informant at this point appeared emotionally upset and on the verge of tears, and that his statement could be supported by questioning the interpreter who was present. The informant seized this opportunity to tell defense counsel that she no longer wanted to talk to him. Defense counsel responded that he would subpoena the informant if she did not continue with the interview. The informant "burst into tears" and indicated that she could no longer continue. At that point the prosecutor informed her that she could await whatever decision would be forthcoming from the court. The prosecutor expressed his view that in light of the duration of the interview (some 25 minutes), defense counsel should *now* elect whether to call the informant as

a witness. The trial court acknowledged that the time interval was such that defense counsel had certainly gotten to the "meat" of the matter. Characterizing the trial as a search for the truth and that the parties should "stop playing games here," the trial court stated that "nobody wants to call [the informant]." At this juncture, defense counsel candidly admitted that "there is no question in my mind * * * if this woman came out here right now and was asked were you there on November 8th when Blackie sees Poppy make a sale, she'll say yes. No question in my mind about that." All agreed that the one simple question was whether the informant would point to the defendant and say that he was the one that sold the narcotic to the undercover officer. Defense counsel opined that the informant would refuse to talk to him. At the court's suggestion, another attempt was made by defense counsel to continue with the interview, but the informant refused and was served by defense counsel with a subpoena. The trial court acknowledged that one Detective Struck indicated that there were still cases in which the undercover confidential informant was involved and that the prosecutor should have remained present during the 25 minute interview. At this point the court adjourned. After resumption of trial, the People rested. Defense counsel's motion to dismiss the indictment on the ground that the People had failed to make out a prima facie case was denied. The trial court reserved decision on whether the People had complied with the *Goggins* rule. The defense proceeded to present its case. On Monday, May 15, 1976, defendant took the stand and testified on his own behalf. During the course of proceedings on this day, defense counsel admitted that at about five minutes to 1:00 P.M. he was informed that the confidential informant had responded to his subpoena by going to the prosecutor's office and was available. Taking the position that this was noncompliance with the subpoena because the witness did not appear in the courtroom at 10:00 A.M., defense counsel refused to acknowledge an opportunity to interview her and subsequently, at 2:00 P.M., rested his case without calling the informant as a witness. The prosecutor informed the court that the informant was present in his office, having come on her own in compliance with defense counsel's subpoena. Upon inquiry from the court as to why the witness had gone to the District Attorney's office rather than directly to the courtroom, the prosecutor replied that, as she was a confidential informant and in light of her prior experience, she did not desire to be standing out in the hallway and felt safer in coming to his office as defendant might have friends passing by in the hallway outside the courtroom. After the People called a rebuttal witness, defense counsel was given yet another opportunity to have the informant brought before the court for purposes of enabling defense counsel to continue to interview her. Defense counsel adamantly refused, adhering to his position that she did not comply with his subpoena. The trial court ruled that there had been substantial compliance with *Goggins* and with the law in respect of the production of confidential informants. Patently, in light of the rationale set forth in *People v Goggins* (34 NY2d 163), the People furnished the informant's identity and even produced the informant. There is not a scintilla of evidence elicited on the record which suggests that the female informant might exculpate the defendant or that the furnishing of the informant's identity and the production of her for interview by defense counsel was a vain and idle gesture on the People's part. As aptly noted in *People v Buckler* (39 NY2d 895, 897): "Nor was it essential, as the defendant asserts, for the People to produce both detectives who witnessed the confession. It is not incumbent upon the prosecutor 'to call at trial every witness to a crime or to make a complete

and detailed accounting to the defense of all law enforcement investigatory work' *(People v Stridiron,* 33 NY2d 287, 292). Here, as in the *Stridiron* case, there was no showing that the uncalled witness would have given different testimony. Indeed, the defendant knew of his identity and yet chose not to call him. A claim of denial of due process or unlawful suppression of evidence by the prosecution is unavailing *(People v Stridiron, supra;* see, also, *People v Fein,* 18 NY2d 162, 172, app dsmd 385 US 649; *Moore v Illinois,* 408 US 786, 795)." This is not a situation where the People rely solely on circumstantial evidence to prove the defendant's identity. Here, they produced the undercover police officer who made the "buy" of narcotics from defendant, and this witness positively and unequivocally identified defendant. Obviously, the failure of the People to call a witness under their control with respect to a critical and material issue raised by the defendant and clearly relating to the guilt or innocence of the defendant, as, for example, where a defendant claims a confession was coerced and the People failed to call the officer who obtained that confession to rebut that assertion, raises the assumption that the witness' testimony would be unfavorable to the People and thus corroborative of the defendant's claim (see *People v Valerius,* 31 NY2d 51). The issue in our case is simply a conflict in testimony by the defendant to the effect that he is not the one who sold the narcotic to Officer Castro and the latter's testimony to the effect that defendant is the one who sold the narcotic. Assuming the informant Concetta Santiago's reluctance to testify would cloud her co-operation upon being called to the stand by defendant, defense counsel could properly request that the witness be declared hostile or unwilling, in which event the direct examination, at the discretion of the court, could assume the character of a cross-examination (see Richardson, Evidence [10th ed], § 483). Indeed, the trial court as much as suggested this approach to defense counsel in advising that the court would use its full power to compel the informant to disclose the truth, when and if called by defense counsel to the stand. Obviously, at least insofar as this witness' own utterances indicate, her reluctance to testify emanated from her fear for her own safety. It might be expected, therefore, that any antagonism arising out of this fear in consequence of being called as a witness might well focus on the party so calling her to testify. In any event, as the informant was equally available as a witness to either party, the rule with respect to the drawing of an unfavorable inference from the failure to call that witness cannot be inferred from the circumstances (see 21 NY Jur, Evidence, § 127; see, also, *People v Law,* 48 AD2d 228). Assuming the confidential informant to be within the control of the People at the time of trial, it was incumbent upon them not merely to furnish her identity to defense counsel under the circumstances herein, but also to produce her pursuant to the *Goggins* rule. This they did! It was not further incumbent upon the People to call the informant as a witness if, in light of the unfolding circumstances, they chose not to do so, and nothing in *Goggins* demands such a course of action. Further, the witness, having been produced, defendant subpoenaed such witness, and failure of the People to call the informant does not permit the inference that her testimony would have been unfavorable to the People because the defendant, having the opportunity, failed to compel her attendance. Of course, this is not an absolute rule, and even where a witness might be deemed equally available, circumstances might dictate that an adverse inference from the failure of a party to call that witness might be charged in a criminal case (see *People v Moore,* 17 AD2d 57). However, the circumstances herein dictate that the trial court properly refused to give an

adverse inference charge respecting the failure of the People to call the informant. Under the circumstances here, the informant's testimony would be cumulative on the issue of identification. Of course, in a particular case the issue to which the testimony of the witness is cumulative might be so close that failure to call the witness could give rise to invocation of the adverse inference rule. It suffices to state that, even assuming the issue of identification to be critically close in this matter, the defense counsel obtained a 25 minute private interview with the informant in a neutral noncoercive atmosphere, at the conclusion of which he admitted to the court that the informant's testimony would be corroborative of the undercover officer. Thus it is clear that defense counsel's refusal to call the female informant was part of his trial strategy. Indeed, in summation, defense counsel alluded to the fact that nothing was known concerning both informants herein. In effect, by raising the issue of the adverse inference rule on appeal, defendant is asking for the cake he has already eaten. Having utilized this trial tactic ineffectively, defendant now requests this court to hold against the People the failure to call to the witness stand this informant whom defense counsel had interviewed privately, knew would implicate his client, and whom he determined not to call despite the trial court's volunteering to co-operate by granting defense counsel the widest possible latitude in his examination of said informant upon the latter's taking the stand. Any claim of prejudice by defendant is, on this record and in light of the aforesaid, unfounded. Accordingly, the judgment of the Supreme Court, Bronx County, rendered May 19, 1976, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the second degree, should be affirmed.