■ The People of the State of New York, Respondent, v Elayan Tayeh, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Golden, J.), rendered June 3, 1981, convicting him of conspiracy in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. Defendant and one Hashem Shouman were charged with conspiracy in the second degree, in that they acted in concert with intent to commit arson in the third degree and agreed with each other and others to commit that

felony. The indictment set forth three overt acts, i.e., (1) on July 20, 1978, defendant received a quantity of money, viz., $1,000, (2) on August 9, 1978, defendant and Shouman inspected a carpet store, and (3) on August 21, 1978, Shouman received money. The People's case consisted primarily of the testimony of Nicholas Kuzon, the undercover detective who posed as a wealthy businessman seeking to have his carpet store burned down for insurance purposes. Numerous taped conversations between defendant and Kuzon and others were also introduced in evidence. Defendant testified that he only intended to obtain money from Kuzon, and that he never intended to actually set the fire. Both defendant and Shouman were convicted and sentenced to indeterminate terms of imprisonment. Defendant raises numerous points on appeal. We find all to be without merit and comment briefly on some of them. First, defendant argues that the tapes of his conversations should not have been admitted in evidence because they were not sealed pursuant to CPL article 700, and the People failed to establish a chain of custody of the tapes. We disagree. Where, as here, one party to the conversation consents to its recording, "the constitutional privacy rights of other participants are not implicated * * * [h]ence, it is unnecessary to superimpose the admissibility requirements of article 700 on consensual recordings" (*People v McGee,* 49 NY2d 48, 59). The standard to be applied in determining the admissibility of such tapes is that which is applicable to any real evidence. In ascertaining whether a proper foundation has been laid for the introduction of real evidence, accuracy is the focus of inquiry. It must be established by clear and convincing proof that the evidence offered is genuine and that there has been no tampering with it. A chain of custody principle is employed when evidence is not patently identifiable, or is capable of being replaced or altered, as with drugs (see *People v Julian,* 41 NY2d 340). Tape recordings made by a participant to a conversation do not fall within this category. Where the participant is available to testify that the conversation was fairly and accurately reproduced on the tape and that it has not been altered, a foundation is established and chain of custody evidence is not necessary (see *People v McGee, supra,* p 60). In this case, Kuzon and another undercover participant testified that the tape recordings of the conversations in which they participated accurately and fairly represented those conversations. Indeed, defendant himself testified that one tape of conversations which he had with the police informant was fair and accurate. Thus, there is sufficient proof of accuracy and authenticity of the tapes to warrant their admission. Defendant next claims that it was error for the court to refuse to order the People to produce Sy Salinger, the police informant, at trial. Detective Kuzon testified that Salinger's role was to introduce him to a middleman who was to hire another to burn down the subject store. Thereafter, defense counsel asked the court to instruct the District Attorney to produce Salinger. The prosecutrix responded that she had no control over him, that she had no contact with him since May 17, 1978, and that at the time of the trial, he was as available to anyone as he was to the District Attorney. Defendant claimed that the prosecutrix was acting in bad faith in failing to produce Salinger, noting Kuzon's testimony that he had told Salinger that he would be "insulated", that is, not brought forth at trial. Defendant now argues that he was deprived of the opportunity to cross-examine the informer. Again, the point is without merit. Although the relevance of the testimony is the criteria used in determining whether a confidential informer must be disclosed (*People v Pena,* 37 NY2d 642, 645; *People v Goggins,* 34 NY2d 163, 170, cert den 419 US 1012), a higher standard of materiality is imposed for production (*People v Jenkins,* 41 NY2d 307). In any event, Salinger was not a confidential informant as his name and last known address were available to defendant. The issue is actually whether the

People should have been required to call him as a witness, and not whether they must have disclosed the identity of, or produced, a confidential informant. On this record, we cannot say that the prosecutrix abused her discretion in declining to do so (*People v Buckler*, 39 NY2d 895, 897; *People v Stridiron*, 33 NY2d 287, 292; cf. *People v Andre W.*, 44 NY2d 179) and it was not error for the court to decline to compel the People to do so. Defendant's contention that the court erred in failing to instruct the jury on renunciation and duress is also meritless. To warrant a charge on renunciation, it must be established by defendant that he withdrew from participation in the offense prior to the commission thereof and made a substantial effort to prevent its commission (Penal Law, § 40.10, subd 1; see *People v Ozarowski*, 38 NY2d 481, 492). There is no evidence in this record which would support a theory of renunciation. Prior to the alleged renunciation, defendant accepted a $1,000 payment from Kuzon, which itself was one of the overt acts charged constituting the conspiracy. He did not thereafter attempt to prevent the commission of the conspiratorial plan since he and Shouman subsequently went to the carpet store to inspect it, and at one additional meeting between defendant, Shouman, Kuzon and another officer, the plans for the arson were finalized. Inasmuch as defendant neither withdrew from participation in the offense nor made an effort to prevent the commission of the crime, the court correctly refused the requested charge. Nor was the failure to charge duress error. The affirmative defense of duress requires a showing that "the defendant engaged in the proscribed conduct because he was coerced to do so by the use or threatened imminent use of unlawful physical force upon him * * * which force or threatened force a person of reasonable firmness in his situation would have been unable to resist" (Penal Law, § 40.00, subd 1). Here, the alleged coercive situation also occurred subsequent to the defendant's taking of the $1,000 from Kuzon. As a matter of law, this overt act was clearly the product of defendant's free will, and not of duress. Furthermore, there was no evidence presented that any physical force or immediate threat of physical force was inflicted on defendant. The duress defense may not be used when the threat of force is not capable of immediate exercise or realization (see *People v Brown*, 68 AD2d 503, 513). Finally, some comment on the use of the words "torch" and "torch job" by the prosecutrix during trial and summation is in order. The court had earlier ruled that, while these words appeared in the taped conversations, no other such references should be made during the trial due to their prejudicial effect on the jury. Although any further use of these words was improper, the references by the prosecutrix and her witnesses were infrequent, prompt objections thereto were sustained, and curative instructions were given. Under the circumstances, it cannot be said that defendant was deprived of a fair trial, and in view of the overwhelming evidence of defendant's guilt, any error in this respect was harmless (see *People v Galloway*, 54 NY2d 396; *People v Arce*, 42 NY2d 179; cf. *People v Bailey*, 58 NY2d 272). Mollen, P. J., Titone, Bracken and Brown, JJ., concur.