THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES WALLERT, Appellant.

First Department, December 20, 1983

### APPEARANCES OF COUNSEL

*Patrick M. Wall* of counsel (*Oren Root, Jr.,* with him on the brief; *Patrick M. Wall, a Professional Corporation,* attorney), for appellant.

*Bruce Allen* of counsel (*Mark Dwyer* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

CARRO, J.

Two days after a jury had convicted him of first degree rape and related crimes, defendant was served with

a summons and complaint in a civil action for $18,000,000 damages arising from the rape incident. Although the prosecutor knew prior to the trial that the complainant had consulted an attorney who was but awaiting the outcome of the criminal action, the prosecutor felt no duty to disclose this information to defendant's counsel. (See *Brady v Maryland,* 373 US 83.) Defendant made a CPL 330.30 motion to set aside the verdict, which was denied without opinion. Defendant was subsequently sentenced and, on appeal here, argues that the People had a constitutional duty to disclose knowledge of the civil suit prior to trial, and further, that the introduction into evidence, over objection, of a blown-up mug shot without any foundation having been laid was reversible error. We agree that the photograph should not have been admitted in the uncorroborated fashion it was, and that on the facts of this case defendant was denied due process of law by the failure of the prosecutor to disclose his knowledge of the civil suit while arguing in summation that defendant could point to no motive for the complainant to lie.

Defendant and the complainant met at Great Adventure Amusement Park where the latter was a dancer in a show. They exchanged numbers and on July 20, 1982 went on a date. After seeing a Broadway musical they went to dinner, where they were joined by a friend of Wallert. He remained with them the rest of the evening and around 3:00 or 4:00 A.M. the limousine took all three to Wallert's apartment. The complainant testified that the friend soon left, after which the defendant sexually attacked her, using a razor blade, brute force and the threat of a gun to strip and attempt an assault which, she claimed, he was actually unable to fully perform. She stated that at one point he punched her in the mouth and she managed to scratch him on the cheek, drawing blood. Ultimately however, defendant calmed down and the two left the apartment together about 11:00 A.M., she getting into a cab and going to a friend's apartment.

Wallert's version was, of course, somewhat different. He testified that the three ended up at his apartment at the complainant's insistence, not his, and that she refused to leave when his friend did. Instead, she kept him up the rest

of the night with a depressing monologue of her bitterness for her show business experiences, until an 8:00 A.M. wake-up call prompted him to get dressed for work. Defendant testified that they left together about half an hour later, with him giving her cab fare to go home.

Obviously in cases of this sort the focus is on discrepancies in detail and the credibility of both parties. Witnesses for defendant placed him at a business meeting that morning, thus verifying his time of departure from the apartment. Further, an officer, who interviewed the complainant later that day, testified that she had told him the departure time was, in fact, 8:30 A.M.

The people who worked with Wallert that day said they saw no signs of scratches on his face. Although the ends of the complainant's fingernails had been clipped off at the hospital and preserved, no evidence of any test results on those clippings was introduced. And though a bloodstain on her dress was determined to be human, it was not typed. The prosecutor introduced into evidence — without objection — a mug shot of Wallert that showed no apparent facial scars, and none of the numerous police officials who processed defendant at arrest were produced to testify that Wallert's face was scarred or marked.

■ Thus there was no basis for the prosecutor's offer and the court's acceptance — over vehement objection — of an enlargement of the mug shot which the prosecutor claimed showed scar lines. Although the prosecutor promised to produce the technician who made the blowup, the photo was never authenticated in even this way. Since it is fairly debatable whether the marks — if indeed they are marks, and not just skin color variations — depict scars, it was error to offer the blowup without a proper foundation and to argue to the jury that it corroborated the complainant. (Cf. *People v Byrnes,* 33 NY2d 343, 349.)

■ More crucial, however, is the question of the complainant's motive to lie and the concealment of the civil suit for damages. The general rule of *Brady v Maryland* (373 US, at p 87) is that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution." It is now well settled that a prosecutor is under an affirmative duty to disclose to the defendant material evidence which is exculpatory in nature (*United States v Agurs,* 427 US 97) and such material may include evidence which impeaches the credibility of a prosecution witness. (*Giglio v United States,* 405 US 150, 154; *People v Cwikla,* 46 NY2d 434, 441; *People v Hopper,* 87 AD2d 193, 197.)

Here, given the nature of the People's evidence, it was fundamentally obvious that the complainant's credibility and motive for testifying would be a crucial issue. We have before emphasized a prosecutor's duty in such situations to, at the very least, submit to the Trial Judge the question of whether disclosure is required. (Cf. *People v Gonzalez,* 74 AD2d 763, 764-765.) "The purpose of the duty is * * * to make of the trial a search for truth informed by all relevant material" (*United States v Bryant,* 439 F2d 642, 648 [per WRIGHT, J.]).

The violation of this duty was aggravated at trial since the defendant had to admit on the stand that he could think of no reason why the complainant should make such charges against him, and the prosecutor emphasized it in his summation: "There is no motive this woman would come in here and falsify and accuse him of rape. Absolutely no motive * * * even he [the defendant] admits no motive to lie."* Even defense counsel conceded this in summation, and the court repeatedly referred to the motive and interest of the witnesses in its charge. The cumulative effect was to make this the crucial issue.

"The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." (*Napue v Illinois,* 360 US 264, 269.)

In sum, the failure of the prosecutor to inform defendant of the civil suit was a clear *Brady* violation "inasmuch as [that fact] had the possibility of assisting the defendant and raising a reasonable doubt." (*People v Kitt,* 86 AD2d

---

* Cf. *People v Jones,* 63 AD2d 637; *People v Agron,* 10 NY2d 130; *People v Lane,* 10 NY2d 347.

465, 467.) Plus, the additional wrong of the prosecutor's arguing that which wasn't, denied Wallert of a fair trial in violation of his right to due process. We therefore reverse the conviction and order a new trial.

Judgment entered March 10, 1983 in Supreme Court, New York County (EDWIN TORRES, J.), convicting defendant of rape and sodomy in the first degree, assault in the second degree and sexual abuse in the first degree, should be reversed on the law and a new trial ordered.

MURPHY, P. J., ROSS, ASCH and BLOOM, JJ., concur.

Judgment, Supreme Court, New York County, rendered on March 10, 1983, unanimously reversed, on the law, and a new trial ordered.