THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FREDDIE VELEZ, Appellant.

First Department, June 26, 1986

## APPEARANCES OF COUNSEL

*Peter Lushing (Hillary Breitbart* with him on the brief), for appellant.

*Marianne Karas* of counsel *(Billie Manning* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

WALLACH, J.

We reverse defendant's conviction, following a jury trial, of the crime of burglary in the second degree on the ground that his fundamental right to a fair trial and due process confrontation of a key witness against him was denied by the failure of the prosecution timely to produce evidence known to it in advance of trial which might have significantly impeached the testimony of the key witness who testified against him *(Brady v Maryland,* 373 US 83).

Defendant's conviction rests primarily upon the narrative of complainant Hilario Gonzalez who testified that at 12:40 P.M. on April 13, 1983, he left his fourth-floor Bronx apartment for an errand and remained in the street for a time. Alerted by the shouts of a neighbor, he ran up his stairway and reached the hall outside his apartment when he noticed that the gate used to bar his kitchen window was displaced on the hallway floor, and that both the hallway and the kitchen windows were open. (These windows are opposite each other, and a perilous entry to Gonzalez' apartment can be effected by climbing from the hallway window over an air space into the kitchen.) After unsuccessfully attempting entry at the locked front door, Gonzalez then saw a male figure at the kitchen window attempting to climb across to the refuge of the hall. The figure then disappeared, Gonzalez started to climb across, and then realized that the intruder was going to escape by the front door. Gonzalez gave chase through the hallway, and never losing sight of his quarry pursued him up one flight, down five flights of stairs in the building, and into the street. As the chase continued, Gonzalez shouted for assistance and an unknown pedestrian tripped the fleeing defendant. Gonzalez trapped defendant on the ground, applied a "full Nelson" wrestler's hold, and forced him to return to the front of Gonzalez' apartment building. Defendant made statements to Gonzalez that "I didn't take anything so let me go," and further to the effect that the latter's uncle had given him

permission to enter the apartment to retrieve a gun. He repeated this false claim of permission to enter the apartment (defendant gave no such testimony at trial) to two police officers who arrived to effect his arrest, both of whom so testified in rebuttal. Gonzalez went to his apartment, found it in disarray, and recovered a briefcase containing a screwdriver, keys, and cigarettes, which he turned over to the police and which were placed in evidence at the trial. Defendant, who testified at trial, denied making the statements and having any connection with the briefcase. His defense was simply that he was an innocent bystander inexplicably apprehended by complainant and an angry mob without any basis whatever.

The *Brady* issue arose after Gonzalez had left the stand never to return. Defense counsel made an application for his recall after learning that Gonzalez, while waiting in court, had had a conversation with defendant Velez' wife in which Gonzalez had expressed his belief that defendant had committed a robbery upon Gonzalez' wife two weeks before the trial, and that counsel wished to interview Gonzalez to see whether this false belief had tainted Gonzalez' testimony with hostility and bias. Despite good-faith efforts by the prosecutor to locate Gonzalez, he had disappeared. The prosecutor conceded that she had known of Gonzalez' belief that defendant had robbed his (Gonzalez') wife in retaliation for Gonzalez' upcoming role as the complainant at defendant's burglary trial and had failed to apprise defense counsel of this circumstance. While the trial court expressed the view that "the People had an obligation to disclose the fact that the witness [Gonzalez] believed that defendant had something to do with the robbery" the court opined that the issue of Gonzalez' bias was "collateral", that this witness' demeanor on the stand betrayed no discernible bias, and that his testimony did not depart from his Grand Jury version of the events, which of course had been given prior to the robbery and was therefore untainted by it.

Although defendant did not move for a mistrial specifically on this ground, we review the claim in the interests of justice. In *Brady v Maryland (supra,* at p 87), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Standing alone, *Brady* is not dispositive of this

case because no request was made for the impeaching information for the obvious reason that defense counsel had no knowledge of it. Thirteen years after *Brady,* the United States Supreme Court in *United States v Agurs,* (427 US 97) refined its analysis of the *Brady* problem. In *Agurs,* Justice Stevens, writing for the majority, explained (at p 103) that the *Brady* rule "applies in three quite different situations." The first involves the use by the prosecution of testimony that the prosecutor knew, or should have known, was perjurious. Such a conviction is fundamentally unfair, and must be set aside, if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. A second situation, illustrated by the *Brady* case itself, occurs where there is an explicit request for an item of evidence which is improperly withheld by the prosecution. In such an instance, whether or not the withholding is intentional or otherwise, an error of constitutional dimension occurs if the withheld evidence can be viewed in any light as material. In a third situation exemplified in *Agurs* (and the case before us is in this category), there is either no defense request at all, or such a generalized request (i.e., "produce all Brady material") that the prosecutor's obligation remains defined only by a general duty of fairness to the accused and professional responsibility *(People v Simmons,* 36 NY2d 126), the scope of which may be at times unclear.

The Supreme Court held in such a class III case that a *Brady* violation does not create a per se constitutional violation, but that to prevail on appeal the defendant must show that the omitted evidence creates a reasonable doubt that did not otherwise exist and that "omission must be evaluated in the context of the entire record. *If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.* On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *(United States v Agurs,* 427 US, at pp 112-113; emphasis added.)

When the *Agurs* formulation is applied to this record, a fairly close question is presented. Thus, this case is not controlled by our decision in *People v Wallert* (98 AD2d 47) (a class I case) in which in a rape case the prosecutor elicited from defendant on cross-examination that he knew of no reason why the complainant would lie, and then argued in his summation that complainant had no motive to lie, despite the

prosecutor's knowledge that complainant had prepared a summons and complaint in a civil action seeking $18,000,000 in damages which was served two days after defendant's conviction. Nor is this case on all fours with *People v Cwikla* (46 NY2d 434) (a class II case) in which the prosecutor permitted an accomplice witness against defendant to testify that he had been given no promise in consideration of his testimony, although admittedly requesting the Assistant District Attorney to write to the Parole Board on his behalf. Defense counsel in *Cwikla* made an immediate application for the production of correspondence between the District Attorney's office and the Parole Board concerning the witness, but the assistant refused to produce this material or even to indicate whether or not any correspondence existed. In fact, there was a significant letter from the assistant himself detailing the witness' cooperation and urging leniency which was acknowledged by the chairman of the Parole Board, who expressed gratitude for the assistant's concern and assurances that his recommendation would receive weighty consideration at the accomplice's parole hearing.

Here, wholly apart from the *Brady* material, the People produced a strong case against defendant. Nonetheless, it cannot be gainsaid that its compelling character depends almost entirely upon the jury's acceptance of Gonzalez' testimony at full value. Therefore, the jury was entitled to hear any evidence which would assist them in a valid assessment of this witness' credibility. We are satisfied that fairness to the defendant required that he be permitted to submit evidence of Gonzalez' possibly overriding animosity against him, and to show that this witness' testimony might have been motivated, or at least strongly affected by, a desire either for vengeance or to protect his wife from possible further harm. Potential bias of that magnitude cannot be viewed as a "collateral" matter *(People v Wallert, supra)*.

Since there may be a retrial, we would note that there is no validity to defendant's contention that his statements to Gonzalez before the arrival of the police are subject to suppression since the latter was not a public servant *(People v Horman, 22 NY2d 378)*, and there is no basis whatever for the suggestion that Gonzalez was acting as an agent of the police *(People v Jones, 47 NY2d 528)*. If an issue should arise as to the voluntariness of these statements, or whether they were the product of physical force, defendant may be entitled to an appropriate charge (CPL 710.70 [3]). The question is not pre-

sented, however, on this appeal, since defense counsel requested no such charge and took no exception to its defense.

Accordingly, the judgment rendered June 14, 1984 in Supreme Court, Bronx County (Lawrence J. Tonetti, J.), convicting defendant, after a jury trial, of burglary in the second degree, should be reversed, on the law, and as an exercise of discretion in the interest of justice, and a new trial ordered.

MURPHY, P. J., CARRO, LYNCH and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on June 14, 1984, unanimously reversed, on the law, and as an exercise of discretion in the interest of justice, and a new trial ordered.