■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICARDO SANTIAGO, Appellant.—Order, Supreme Court, Bronx County (Gerald Sheindlin, J.), entered May 8, 1986, which denied defendant's motion pursuant to CPL 440.10 and 440.20 to vacate the judgment of the same court, rendered March 20, 1985, convicting him, after a jury trial, of rape in the first degree and two counts of sodomy in the first degree, terminating his probation on another conviction and sentencing him as a second felony offender to concurrent indeterminate terms of from 7½ to 15 years' imprisonment, reversed, upon the law and the facts and as a matter of discretion in the interest of justice, the motion granted and a new trial ordered. Appeal from the judgment of conviction dismissed as academic in light of the foregoing determination.

On direct examination, the complainant testified that at one time she had been a candidate for the Police Department. However, on cross-examination, she admitted to a criminal conviction record. She testified that she had been caught in a friend's apartment which had been burglarized, but claimed that she was not guilty of the burglary and had pleaded guilty to the misdemeanor of criminal trespass.

In its charge, the court instructed the jury that the complaining witness had been convicted of the misdemeanor crime of criminal trespass and that the nature of the offense could be considered in determining the weight to be given to her testimony. At the time of sentencing, however, defense counsel discovered, for the first time, that the complaining witness had actually been convicted of attempted burglary in the second degree and that, at the time of the trial, she had an outstanding probation violation. The defendant, thereafter, moved to vacate the judgment pursuant to CPL 440.10 and 440.20 on the ground that there had been prosecutorial misconduct in the failure to disclose this information to him.

The defendant clearly had the right to be provided with the correct information with respect to the complainant's conviction. Moreover, the court, relying on the complainant's false testimony, incorrectly instructed the jury that she had been convicted of a seemingly innocuous misdemeanor when it was actually a felony.

Under all of the circumstances, the defendant is entitled to a new trial. Concur—Kupferman, J. P., Kassal and Smith, JJ.

Sullivan and Ellerin, JJ., dissent in a memorandum by

Sullivan, J., as follows: The resolution of a motion to vacate a judgment of conviction is a matter resting solely within the discretion of the trial court. (CPL 440.10 [2]; *People v Welcome,* 37 NY2d 811, 812.) In the instant case, the trial court, finding that the purported "withheld" evidence regarding the complainant's criminal history and probationary status "relate[d] to issues which had already been brought out before the jury at trial, and about which the complainant had been extensively cross-examined by defense counsel", determined that such matters did not rise to the level of newly discovered evidence so as to warrant vacatur of his conviction. Since this determination is supported by a review of defendant's claim as well as the record at trial, read as a whole, I find no abuse of discretion and would affirm both the denial of the motion to vacate the judgment of conviction and the conviction itself.

The principle that material evidence exculpatory in nature and in the possession of the prosecution must be made accessible to the defendant *(see, Brady v Maryland,* 373 US 83; *People v Cwikla,* 46 NY2d 434, 440; *People v Savvides,* 1 NY2d 554) also applies to material evidence which impeaches the credibility of a People's witness. *(People v Cwikla, supra,* at 441; *People v Howard,* 127 AD2d 109, 113; *People v Wallert,* 98 AD2d 47, 50.) A violation of such obligation does not, however, automatically require a reversal and the direction of a new trial. The "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *(United States v Agurs,* 427 US 97, 109-110.) Reversal is required only where the undisclosed evidence, evaluated in the context of the entire record, creates a reasonable doubt. Thus, in order to prevail on such a claim, the defendant must establish that the omitted evidence is material, i.e., that there is a reasonable probability that, had the evidence been disclosed, the result would have been different. *(Supra,* at 97; *United States v Bagley,* 473 US 667.)

Defendant initially contends that the prosecutor improperly "permitted his chief witness, Russelle Miller, to falsely assert * * * that she had a prior conviction for a misdemeanor", when, in fact, she had been convicted of attempted burglary in the second degree, a felony. No proof was ever offered that the prosecutor knew of, or should have known, that the complainant had a prior criminal record. As even defense counsel conceded in his motion to set aside the judgment, the first time that the prosecutor became aware of the complainant's criminal record was during cross-examination when defense

counsel elicited that she had been arrested in an apartment. In fact, both the complainant and her husband had testified that she was at the time of trial a candidate for the New York City Police Department, having passed all the necessary examinations. Moreover, she testified that while disclosing her Police Academy candidacy status to the prosecutor prior to trial, she never volunteered any information regarding her criminal record, since she believed it was unnecessary. Nor did the prosecutor question her about any criminal record that she might have. Absent any evidence of the prosecutor's knowledge of the complainant's record, he cannot be charged with its suppression. *(People v Cwikla, supra,* 46 NY2d, at 441; *People v Stanard,* 42 NY2d 74, 85; *People v Simmons,* 36 NY2d 126, 131; *People v Stridiron,* 33 NY2d 287, 292.) Insofar as his statutory obligation to disclose is concerned, a prosecutor must make available to the defendant any known "record of judgment of conviction" of a People's witness. (CPL 240.45 [1] [b].)

Furthermore, defendant has failed to demonstrate the material and exculpatory nature of this evidence. That the complainant was convicted of a felony and not a misdemeanor is not exculpatory, although it certainly could have been used for impeachment purposes. Since the evidence does not exclude defendant as the perpetrator, a reasonable probability does not exist that its disclosure would appreciably affect the result, a requirement in terms of considering materiality. *(See, Brady v Maryland, supra,* 373 US 83.) Moreover, defense counsel extensively questioned the complainant on cross-examination regarding the circumstances of her sole criminal conviction:

"Q. You have no criminal record of any kind, do you?

"A. Yes

"Q. You do?

"A. Yes.

"Q. Can you tell me what that is?

"A. I have—it's a burglary charge.

"Q. A burglary charge?

"A. Yes.

"Q. A burglary charge, meaning that you went into someone's house to steal their property?

"Is that what you did?

"A. Well, I didn't steal anything, I was caught in the apartment.

"Q. You were caught in the apartment?

"A. Yes * * *

"Q. At any time did [the prosecutor] ask you if you had a criminal record?

"A. No, he didn't.

"Q. Never asked you.

"A. No.

"Q. At any time, did you volunteer the information to him that you had a criminal record?

"A. No, I didn't see if it had anything to do with this case.

"Q. I am sorry?

"A. I didn't think it had anything to do with the case.

"Q. This burglary that you talked about, was there anything else that you ever did besides the burglary?

"A. Excuse me?

"Q. Anything else of an illegal nature besides the burglary?

"A. It was the first time.

"Q. It was the first time?

"A. Yes.

"Q. When did it happen?

"A. About six months ago, eight months ago * * *

"THE COURT: Miss Miller, you say you were arrested and charged with burglary, is that what [you are] saying?

"THE WITNESS: Yes.

"THE COURT: Did you have to go to court.

"THE WITNESS: Yes.

"THE COURT: Did you plead guilty?

"THE WITNESS: Yes.

"THE COURT: Were you sentenced?

"THE WITNESS: Yes.

"THE COURT: When were you sentenced?

"THE WITNESS: In October.

"THE COURT: October of 1985.

"THE WITNESS: Yes * * *

"Q. Whether [the conviction] was before or whether it was after, at any time did you ever contact the police officials to tell them that you had committed a burglary and had been convicted of committing a burglary at any time.

"THE WITNESS: No, I didn't.

"Q. At any time?

"A. No, I didn't.

"Q. Now this burglary was it of an apartment or of a home?

"A. It was an apartment.

"Q. An apartment?

"A. Yes.

"Q. Was it a burglary of an apartment in the area where you live?

"A. Yes.

"Q. Did you do it with anybody else?

"A. I happened to be—it was a friend of mine's apartment.

"Q. You burglarized an apartment of a friend of yours?

"A. I didn't burglarize the apartment, I happen[ed] to be in the apartment when the police came. I was criminally trespassing.

"Q. You were criminally trespassing in the apartment when the police came?

"A. Yes.

"Q. What do you mean you just happened to be there when the police came?

"A. The door was opened, I went into the apartment, somebody had went in previous to my being there, and robbed the apartment.

"Q. You didn't burglarize the apartment?

"A. No, I didn't.

"Q. You just walked in?

"A. Yes.

"Q. Then the police came and you were caught there?

"A. Yes.

"Q. So you were an innocent person who happened to be caught in that situation; is that what you are telling everybody here?

"A. Yes.

"Q. Right?

"A. Yes.

"Q. You were innocent, you didn't do anything wrong?

"A. That is—criminally trespassing, I was in the apartment, yes.

"Q. Did you go in the apartment to commit a crime?

"A. No, I didn't.

"Q. You didn't have any intention of committing a crime when you went in there and when the police found you in there?

"A. Yes.

"Q. And yet, even though you were innocent, you told us that you pleaded guilty, you told the Judge in court that you were guilty of burglary?

"A. Yes.

"Q. Right?

"A. Yes.

"Q. Well, if you were innocent, why did you plead guilty, why did you tell the Judge you were guilty if you didn't do anything?

"A. I was caught in the apartment.

"THE COURT: You know what you pled guilty to, Miss Miller, was it a felony or a misdemeanor?

"THE WITNESS: It was—when I pled guilty, it was a misdemeanor * * *

"Q. Was anything missing from that apartment?

"A. A T.V.

"Q. When the police came in, by any chance, did you happen to have anything from the apartment in your hands?

"A. No, I did not."

Clearly, the jurors were fully informed as to the circumstances of the complainant's criminal conviction. Moreover, defense counsel was able to question her in a way calculated to mimic her innocent explanation of the incident, and, on summation, vigorously attacked the complainant's credibility on the basis of this incident. Consequently, in light of the extensive evidence presented on this issue, merely because the jury did not learn that the complainant was actually convicted of a felony is harmless. *(People v Fuller,* 50 NY2d 628; *People v Novoa,* 70 NY2d 490.) That the Trial Judge, relying on the complainant's false testimony, incorrectly instructed the jury that she had been convicted of a misdemeanor rather than a felony adds nothing to the argument. Having heard extensive cross-examination on the subject, the jury could hardly have been persuaded one way or the other by the label placed on the crime for plea purposes. Nor should we ignore that the witness' criminal record is, in any event, a collateral matter.

Defendant argues, however, that without regard to harmless error analysis the conviction must be reversed because of the prosecutor's knowing use of false testimony. In support of this claim, defendant contends that knowledge of the felony conviction should be imputed to the prosecutor, since the burglary charge had been prosecuted by the same office of which

he was a member. This claim is without merit. Judgment had been entered in the burglary prior to this trial. The prosecutor here had no involvement in that matter. A Trial Assistant assigned to a particular bureau cannot be expected to be familiar with the thousands of cases prosecuted by the office. The complainant's surname, Miller, is a common one, not likely to alert the prosecutor to a specific litigated or pending case. Moreover, the prosecutor did not have any reason to believe that the complainant had a criminal record. Indeed, she was a candidate for the Police Academy. In this regard, defendant's reliance on *Giglio v United States* (405 US 150) and *People v Simmons (supra,* 36 NY2d, at 132), which hold that the knowledge of the Assistant handling a particular case is ascribed to the prosecutorial authority, is misplaced, since that principle is not at issue here. Nor can the prosecutor be charged with knowledge of the complainant's probationary status, which included three alleged violations. As in the case of the complainant's criminal record, the record is barren of any proof that the prosecutor knew of her probationary status. Nor has defendant met his burden of demonstrating the material and exculpatory nature of this evidence. The jury had already heard the most damaging evidence, the complainant's criminal conviction, insofar as her credibility was concerned. In any event, this additional evidence would merely have been cumulative, and would not, as the trial court ruled, have led to a different result.

Finally, it should be noted, the proof of guilt here was extremely strong. In fact, conceding the strength of the People's case, defendant fails to challenge either the weight or sufficiency of the evidence on appeal.

Both the judgment of conviction and the order denying defendant's motion to vacate the same should be affirmed.