The People of the State of New York, Respondent, v Jerry McManus, Appellant.

Second Department, May 20, 1985

### APPEARANCES OF COUNSEL

*William E. Hellerstein* (*Valerie Hriciga* of counsel), for appellant.

*William L. Murphy, District Attorney* (*Karen F. McGee* and *Paul J. Angioletti* of counsel), for respondent.

### OPINION OF THE COURT

TITONE, J. P.

Defendant appeals from a judgment of the Supreme Court, Richmond County, convicting him of "depraved indifference" murder (Penal Law § 125.25 [2]), upon a jury verdict, and imposing sentence. The core issue is whether the trial court erred in declining his request to give an instruction that justification constitutes a defense to depraved mind murder. The question is somewhat complicated by the fact that a justification instruction was given on a separate count of the indictment charging intentional murder and the jury exonerated defendant of that charge. We conclude that the trial court's instructions were correct and, finding no merit in defendant's other contentions, affirm the judgment in all respects.

On April 15, 1980, defendant shot and fatally wounded Dennis Hite. The People's witnesses[1] testified that the victim and one of his cohorts had chased the defendant from a local park area in the New Brighton section of Staten Island. They gave up the chase when they reached defendant's block where they turned around, walked away in the opposite direction and were joined by several other young males. As the group approached a vacant lot, they saw defendant and one of his friends. Defendant, who had a rifle in his hands, yelled "You's [sic] want to play around now", and fired, striking Hite in the chest. All the People's witnesses stated that neither Hite nor anyone else in the group was armed and that no one had attacked the defendant or his companion.

In a written statement made to police officers the night of the shooting, defendant claimed that he left his house and went to the vacant lot where a group of five boys was beating one of his friends. Hite and the others then purportedly chased him, Hite firing two shots from a pistol. Defendant ran to his house, grabbed his uncle's rifle, which he did not know was loaded, and went outside to scare off the attackers. When defendant opened the door, Hite fired at him again and, seeing the rifle, ran off. Defendant gave pursuit. The group allegedly halted their flight to administer another beating to defendant's friend who yelled "Shoot, Shoot". Defendant thereupon pulled the trigger.

A videotaped statement was given to the Chief Assistant District Attorney later that evening. Unlike the written statement, on the videotape defendant made no mention of anyone firing any shots at him. A third version of the events was offered by the defendant at trial. He then claimed that after the group had fled from his residence and had come upon his companion, Hite "was sneaking behind the car and then he came from behind the car and fired a pistol at me. Then [defendant] fired the rifle at him trying to shoot the gun out of his hand".

Charged with two counts of murder in the second degree (Penal Law § 125.25 [1], [2]) and criminal possession of a weapon

---

1. Because the People prevailed at trial, on appellate review we ordinarily view the facts in their favor, assuming that the jury fully credited their witnesses and resolved any inconsistencies in the evidence against the defendant (e.g., *People v Malizia,* 62 NY2d 755, 757, *cert denied* __ US __, 105 S Ct 327; *People v Contes,* 60 NY2d 620, 621; *People v Benzinger,* 36 NY2d 29, 32). In determining whether a justification charge was warranted, however, the defendant is entitled to the most favorable view of the evidence (*People v Padgett,* 60 NY2d 142, 144-145; *People v Watts,* 57 NY2d 299, 301; *People v Torre,* 42 NY2d 1036, 1037; *People v Steele,* 26 NY2d 526, 529; *People v Jenkins,* 93 AD2d 868).

in the fourth degree (Penal Law § 265.01), defendant requested that the jury be instructed on the defense of justification (Penal Law § 35.15). The court told the jury that justification was a defense to the intentional murder count and submitted manslaughter in the first degree as a lesser included offense on the theory that defendant may have acted under the influence of an extreme emotional disturbance. The court declined, however, to instruct the jury that justification was a defense to the depraved mind murder count, explaining to counsel, in response to defendant's exception, "In order for you to have justification, you must have intent. You are admitting that you killed somebody. You did it because you were justified. How can you have a reckless depraved indifference and say you were justified[?] I don't think it applies".[2]

The jury acquitted defendant of intentional murder, was unable to reach a verdict on the lesser included manslaughter charge, and convicted defendant of depraved mind murder and criminal possession of a weapon. The court subsequently dismissed the latter as merged in the murder conviction. Defendant appeals claiming, among other things, that the evidence was insufficient to support a conviction for depraved mind murder and that it was error to deny his request to charge justification as a defense to depraved mind murder.

To put the problem before us into focus, it is useful to observe that depraved indifference murder is little more than a modern analogue of the common-law concept of implied malice (*see,* ALI Modern Penal Code and Commentaries, Part II, § 210.2, at 13-15, 21-28; Moreland, Homicide, at 31-41, 213-216 [1952]; Wechsler & Michael, *A Rationale of the Law of Homicide: I,* 37 Col L Rev 701, 709-713, 720-722). " 'Such malice is implied * * * when the defendant or his accomplice " 'for a base, antisocial motive and with a wanton disregard for human life, does an act that involves a high degree of probability that it will result in death' " ' " (*People v Caldwell,* 36 Cal 3d 210, 216, n 2, 681 P2d 274, 277, n 2, quoting *People v Gilbert,* 63 Cal 2d 690, 704, 408 P2d 365, 373, which, in turn, quotes *People v Washington,* 62 Cal 2d 777, 782, 402 P2d 130, 134, and *People v Thomas,* 41 Cal 2d 470, 480, 261 P2d 1, 7 [concurring opn]; *see also,* California Jury Instructions, Criminal § 8.11, 1982 Cum Pocket Part, at 60).[3]

---

**2.** The jury was also instructed that if the People failed to disprove the defense of justification "you must find the defendant not guilty of the crime of murder in the second degree" under this count and that it should "only consider the second count of murder in the second degree [depraved indifference] if you acquit or cannot reach a verdict on count one and one-a". No exception was taken to this portion of the charge.

**3.** California still follows the common-law approach (Cal Penal Code § 188).

Acts embraced within this definition — "[the] classic example is that of the newly born baby put outside where it almost surely must die unless a stranger discovers it and takes steps to save it" (Clark and Marshall, Crimes § 10.06, at 648 [7th ed]; *see also,* LaFave & Scott, Criminal Law § 70, at 543) — could not meet the common-law standards for excusable or justifiable homicide (Clark and Marshall, *op. cit.* §§ 7.01-7.03, 10.04; *see generally,* Beale, *Homicide in Self-Defense,* 3 Col L Rev 526; Perkins, *Self-Defense Re-Examined,* 1 UCLA L Rev 133).

New York long ago abandoned the confusing common-law nominclature, substituting depraved indifference murder for what would have been implied malice, in part, at common law (*see, People v Register,* 60 NY2d 270, 276-278; *People v Poplis,* 30 NY2d 85; 1937 Report of NY Law Rev Commn, 1937 Legis Doc No. 65, at 536-540; ALI Model Penal Code and Commentaries, Part II, § 210.2, at 22-28; Gegan, *A Case of Depraved Mind Murder,* 49 St. John's L Rev 417).[4] Under the present codification, an individual commits depraved mind murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 125.25 [2]) and a "person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).

There can be little question that defendant's conduct — indiscriminately shooting into a crowd of five persons and causing death — may be punished as depraved mind murder (*People v Gomez,* 65 NY2d 9; *People v Fenner,* 61 NY2d 971; *People v Register,* 60 NY2d 270, 277, *supra;* LaFave & Scott, Criminal Law § 70, at 543). The court correctly instructed the jury that it was required to "[e]xamine the surrounding circumstances of defendant's reckless conduct to determine if his conduct was so senseless, callous and brutal as to show a total disregard for human life" (*see, People v Fenner, supra,* at p 973). The jury's

4. Felony murder was also embraced within the concept of implied malice (Clark and Marshall, Crimes § 10.07 [7th ed]). For the development of the felony murder doctrine in New York see Arent & MacDonald, *The Felony Murder Doctrine and Its Application Under the New York Statutes* (20 Cornell LQ 288), and Corcoran, *Felony Murder in New York* (6 Ford L Rev 43).

"qualitative judgment" and assessment of the testimony on this question should not be disturbed (*People v Le Grand,* 61 AD2d 815, *lv denied* 44 NY2d 737, *cert denied* 439 US 835; *see, People v Gomez, supra*).

Defendant argues, however, that by virtue of the statutory definition of recklessness, i.e., the awareness and conscious disregard of a "substantial and unjustifiable" risk, justification is a defense to depraved mind murder and, therefore, he was entitled to the requested jury instruction. We think that this reads too much into the statutory language as there is no correlation between the "unjustifiable" element of recklessness and the justification defense contained in Penal Law article 35, which concerns a more refined concept of self-defense (Penal Law § 35.15).

Whether a risk is "unjustifiable" for depraved indifference murder "varies with * * * two variable factors — the extent of the defendant's knowledge of the surrounding circumstances and the social utility of his conduct" (LaFave & Scott, Criminal Law § 70, at 542). LaFave and Scott offer a useful hypothetical (*id.,* p 542): "If [one] speeds through crowded streets, thereby endangering other motorists and pedestrians, in order to rush a passenger to the hospital for an emergency operation, he may not be guilty of murder if he unintentionally kills, though the same conduct done solely for the purpose of experiencing the thrill of fast driving may be enough for murder" (*see also, People v Gomez, supra; People v Watson,* 30 Cal 3d 290, 637 P2d 279; *United States v Fleming,* 739 F2d 945).

Unlike justification involved in self-defense, which requires a subjective test, namely, what the defendant himself reasonably believed (*see,* Penal Law § 35.15 [2] [a]; *People v Miller,* 39 NY2d 543, 548; *Shorter v People,* 2 NY 193, 197; *People v Macon,* 110 AD2d 718; *People v Long,* 104 AD2d 902; *People v Wagman,* 99 AD2d 519; *People v Desmond,* 93 AD2d 822; LaFave & Scott, *op. cit.* § 53, at 393-394), the test of whether the risk was so unjustified as to constitute depraved mind murder is objective (*People v Register,* 60 NY2d 270, 277, *supra*). The focus of the offense of depraved mind murder is "not on the subjective intent of the defendant, as it is with intentional murder * * * but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct" (*People v Register, supra,* at p 277). In other words, an individual is guilty of depraved mind murder if a reasonable man would have realized the risk irrespective of whether the defendant himself realized it (*see, Commonwealth v Chance,* 174 Mass 245, 252, 54 NE 551, 554; *Regina*

*v Ward,* 1 QB 351 [1956]; Holmes, The Common Law, at 53-54 [1881]; LaFave & Scott, *op. cit.* § 70, at 544; *but cf. Commonwealth v McLaughlin,* 293 Pa 218, 142 A 213). The acts underlying depraved mind murder involve " 'conduct, beyond being reckless' " which is " 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others' " (*People v Fenner,* 61 NY2d 971, 973, *supra*) as to preclude justification by definition (*cf. Regina v Dudley & Stephens,* 14 QBD 273 [1884]).

The Model Penal Code, on which the New York Penal Law is based, similarly suggests that justification is not a defense to depraved mind murder. The Model Penal Code punishes depraved mind murder (ALI Model Penal Code § 210.2 [1] [b]) and defines reckless conduct in the same fashion as the New York Penal Law (ALI Model Penal Code § 2.02 [c]). Model Penal Code § 3.09 (2) expressly excludes from the embrace of justification circumstances in which the "actor is reckless or negligent in having [a] belief" that physical force is necessary for self protection.[5] While this section does not expressly appear in the New York Penal Law, we find no indication that the Legislature intended to abrogate the common-law rule that only intentional, as opposed to wanton or reckless, acts were subject to a justification defense (*see,* LaFave & Scott, Criminal Law § 53, at 391-394; *see generally,* Perkins, *Self-Defense Re-Examined,* 1 UCLA L Rev 133; Comment, *Justification for the Use of Force in the Criminal Law,* 13 Stan L Rev 566). We deem the statutory requirement that defendant's belief be reasonable (Penal Law § 35.15) to generally preclude such a justification defense to reckless crimes, though there may be "rare cases" in which a justification defense is applicable (1 CJI [NY] P.L. 35.00, at 844).

This approach has been followed in New Jersey (*State v Murphy,* 185 NJ Super 72, 447 A2d 219). In charging a reckless culpable mental state for a lesser offense of assault, the *Murphy* court explained that "even if defendant's beliefs about the use of force at the time were unreasonable, they could still negate a purposeful or knowing culpability requirement but not one for which recklessness or negligence may suffice" (*State v Murphy,* 185 NJ Super 72, 75, 447 A2d 219, 220, *supra*).

Arguably, *People v May* (55 AD2d 739) is to the contrary. In that case, the defendant was charged with attempted assault in the second degree and reckless endangerment in connection with a marital dispute. The jury acquitted the defendant of the

---

**5.** *See,* Model Penal Code, Tentative Draft No. 8, at 78-79, for a discussion of the reasons for this exclusion.

assault charge, but convicted her of reckless endangerment. On appeal, the Appellate Division, Third Department, held that the failure to charge justification warranted reversal despite the lack of request for such a charge or an exception to the charge as given. Without any citation of authority, the Third Department reasoned that once the Trial Judge explained to the jury that the culpable mental state of recklessness required a finding that the defendant disregarded a substantial and "unjustified" risk, it was incumbent upon the court to charge justification.

It is evident that the Third Department was moved by the peculiar facts of the case, and because the reversal was in the interest of justice we do not view *May* (*supra*) as standing for any general principle that justification must be charged whenever the culpable mental state of the crime involved recklessness.[6] Such an instruction, in our view, would be erroneous and to the extent that *May* could be so read, we decline to follow it.

*People v Huntley* (59 NY2d 868) also warrants discussion. In that case, defendant was charged with intentional murder and requested that the jury be instructed on justification as well as lesser included offenses, down to manslaughter in the second degree (reckless homicide). The court refused to charge justification on the manslaughter, second degree, count. The Appellate Division, Fourth Department, found this to be error (87 AD2d 488). In affirming the order directing a new trial, the Court of Appeals simply said (p 869), "We agree with the Appellate Division that it was error for the trial court to refuse to charge, as requested, a justification defense on the lesser included charge of manslaughter in the second degree" (59 NY2d, at p 869, *supra*).

*Huntley* (*supra*) is distinguishable because the justification charge there concerned a lesser included offense and the charge was necessary to avoid jury confusion (*cf. People v Almodovar,* 62 NY2d 126; *People v Sierra,* 45 NY2d 56; *but see, People v May,* 55 AD2d 739, *supra*). In *Huntley,* if the jury found the defendant's conduct to be justified, then he should have been exonerated of *all* charges and not convicted of manslaughter as a lesser included charge (LaFave & Scott, Criminal Law § 53, at 391; *cf. People v Young,* 65 NY2d 103 [May 2, 1985]). Manslaughter in the second degree should have been reached only if the jury rejected justification and then found it necessary to resolve the

---

**6.** We followed *May* in *People v Zurita* (76 AD2d 871), without analysis of the issue, also reversing the judgment in the interest of justice (*see also, People v Jacobs,* 105 Misc 2d 616, 623, noting the "scant case law with respect to the interrelationship between reckless conduct and the justification section as a whole").

permissible inconsistent defense.[7] Moreover, as we have observed, unlike manslaughter in the second degree, depraved indifference murder is differentiated from intentional murder by more than simple recklessness (*People v Poplis,* 30 NY2d 85, *supra*). The base, antisocial conduct forming the predicate for depraved indifference murder cannot be mitigated through the defense of justification.

In this case, we are not concerned with lesser included offenses and there is no danger of jury confusion. Had the jury believed the justification defense, defendant still would not have negated the culpable mental state for depraved mind murder (*cf. People v Almodovar,* 62 NY2d 126, *supra; People v Sierra,* 45 NY2d 56, *supra; State v Murphy,* 185 NJ Super 72, 447 A2d 219, *supra*).[8] Put another way, had a special verdict with interrogatories been utilized in *Huntley* and the jury found that the defendant's conduct was justified, he would have been entitled to a judgment of acquittal whereas here such an answer to an interrogatory would have availed defendant naught because an "acquittal" predicated on justification would not entitle him to exoneration on the depraved indifference count.[9]

In sum, when properly analyzed, the trial court's instructions concerning justification were correct and since there is no merit in defendant's other contentions, the judgment should be affirmed.

LAZER, MANGANO and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Richmond County, rendered November 7, 1980, affirmed.

---

**7.** *People v Stridiron* (33 NY2d 287) is similarly inapposite. In *Stridiron,* the defendant was charged with manslaughter in the first degree, an intentional crime, and convicted of manslaughter in the second degree as a lesser included offense (*see also, People v Albino,* 104 AD2d 317).

**8.** We in no way suggest that the jury, in fact, acquitted defendant of intentional murder based upon the People's alleged failure to disprove the justification defense. It is equally plausible that the jury rejected the intentional murder count because the testimony did not depict the defendant as having aimed the rifle at a particular individual.

**9.** Our discussion of the use of special verdicts in criminal cases is for illustrative purposes only and should not be read as implying approval. We have found no New York case on point and in the Federal system they are generally viewed with disfavor (*see, e.g., United States v Orozco-Prada,* 732 F2d 1076, 1084; *United States v Adcock,* 447 F2d 1337, 1339, *cert denied* 404 US 939; *United States v Spock,* 416 F2d 165, 180-183; *but see, Brown v United States,* 299 F2d 438, 440, n 3 [Burger, J.], *cert denied sub nom. Thornton v United States,* 370 US 946). That question is not before us and we express no opinion on it.