OPINION OF THE COURT
Stephen G. Crane, J.
By this decision the court is dismissing and permitting representation to a third Grand Jury of certain serious charges pending against defendant, Bernhard Goetz, because of a prejudicial error in instructing the second Grand Jury on the defense of justification and due to developments concerning one or more of the "victims” necessitating a superseding indictment.
The case presents a challenging question. Is there an irreconcilable conflict between the right of an individual to resort to self-protection and the need of society to enforce its laws? Any right-thinking person would condemn an indiscriminate shooting in a public place. Yet, an individual is justified in using deadly physical force when he reasonably believes that he is being robbed. Strong emotional reactions stem from the prosecution of a person who shoots another individual about to rob him. In an ordered society, however, justification must be tested in accordance with the processes of the law so that justice may be done for all concerned and, equally, so that all concerned may perceive justice being done. To respond to public opinion of the moment or to capitulate to popular emotions, then, defeats the ends of justice and commits the rule of law to the whims of majority (or vocal minority) dictates.
I. procedural history
In this context comes one of the most difficult criminal cases of our generation. In the early afternoon of December 22, 1984, a man on an IRT subway galvanized the world by shooting four youths who, he said, were attempting to rob him. Nine days later Bernhard Goetz entered a police station *3 in Concord, New Hampshire, claiming to be the subway gunman. He was interviewed at length on videotape and audiotape and then was returned to New York City.
The District Attorney presented charges of attempted murder, second degree, and assault, first degree, as to each of the four youths, and reckless endangerment, first degree, criminal possession of a weapon, second degree, criminal possession of a weapon, third degree (the gun in the subway), and two counts of criminal possession of a weapon, fourth degree (involving two guns he left with a neighbor on Dec. 30, 1984). The defendant did not testify before the Grand Jury hearing these charges although his lengthy recorded statements were placed in evidence and played back for this presentation. Of the four youths who were shot, three were brought before the Grand Jury, but upon their refusal to waive immunity they were excused. On January 25, 1985, the Grand Jury saw fit to dismiss all but the third and fourth degree weapons possession charges.
Later, an application pursuant to CPL 190.75 (3) was granted for resubmission of the charges the first Grand Jury had dismissed. A CPLR article 78 proceeding to overturn this order was dismissed. (Matter of Goetz v Crane, 111 AD2d 729, lv denied 65 NY2d 609.) The new Grand Jury indicted Mr. Goetz on the charges that the first Grand Jury had dismissed. After his arraignment on March 28, 1985, this indictment was consolidated with the indictment on the third and fourth degree weapons charges that the original Grand Jury had voted.
II. MOTION TO DISMISS SECOND INDICTMENT
A. Justification
In charging the second Grand Jury on the law, the Assistant District Attorney gave two sets of instructions on justification or self-defense that he said applied to all the charges.[1] *4 One set pertained to the use of deadly physical force in response to what defendant reasonably believed to be the threat of deadly physical force against him. In these circumstances, the defendant is not justified if he knows he can safely retreat. (Penal Law § 35.15 [2] [a].) After tracking the statute, the assistant repeated the elements. In doing so, he omitted the requirement that the defendant reasonably believe that unlawful physical force was about to be used against him. But defendant does not complain of this omission because it benefited him. Continuing, the prosecutor charged that the defendant’s reactive use of deadly physical force, considered separately for each shot fired, did have to be reasonable. This was basically faithful to the statutory language. Then, the prosecutor reiterated the duty to retreat without reference to the defendant’s knowledge that he can retreat in safety. This was error [2] of which defendant makes no specific complaint. Summarizing, the assistant repeated the instructions using a test of "whether the evidence creates reasonable cause to believe that any shot he fired was not a reasonably necessary response” to what he had perceived.
The second set of instructions concerned the use of deadly physical force where the actor reasonably believes he is about to be robbed. In this defense retreat plays no role. (Penal Law § 35.15 [2] [b]; People v Ligouri, 284 NY 309.) In staking out these instructions, the Assistant District Attorney correctly explained that defendant must have reasonably believed that a robbery was about to occur. This reasonable belief, he said, *5 had to be analyzed as to each of the four youths and as to each shot he fired.
When he had concluded his charge, one of the grand jurors asked the perceptive question at the very core of this entire case: "You use the term reasonably with regard to the state of mind of the defendant. Are we to be concerned with psychiatric statement [sic] or whether we feel this was an insane act or irrational? You say if he believes in his mind that what he was doing — ”. At this point the assistant rendered supplemental instructions:
"I will reemphasize three elements of the defense of justification.
"The first element is that he must in fact believe in his own mind that he was in a situation which he feared that deadly physical force was about to be applied against him.[3]
"The second element is that his response, assuming that he did actually believe[3] his response, was his response reasonable under the circumstances and in determining whether it was reasonable under the circumstances you should consider whether the defendant’s conduct was that of a reasonable man in the defendant’s situation.
"So there’s both a subjective and objective element to this. First of all, you have to determine whether the defendant, in his own mind, believed[3] he was in the kind of peril that permitted him to use deadly physical force. You must also then determine whether his response was reasonable under the circumstances, whether that was the action — the response was the action that he — that a reasonable man who found himself in the defendant’s situation and if it was unreasonably excessive or — or otherwise unjustifiable it — then the defense would not be made out and the third element is retreat.” (Emphasis added.)
These were the final instructions of substance the jurors heard on this or any other legal matter.
Before turning to the contentions of the litigants, it should be noted that the quoted, final instructions on justification seemed to be limited to defendant’s response to deadly physical force, an academic instruction on the facts presented to the second Grand Jury. (See, n 2, supra.) The prosecutor does not seize upon this circumstance to urge this court to avoid *6 deciding the merits of any claimed error in this justification charge. He might have argued that any error was harmless since defendant was not entitled to the charge in the first place. Nevertheless, we cannot discern which of the sets of instruction on justification the grand juror was concerned with because the assistant cut off his or her question. Moreover, because the same phrase — "he reasonably believes” — is involved in both sets (Penal Law § 35.15 [2] [a], [b]), the parting instruction of the assistant must, of necessity, have had an effect in the grand jurors’ understanding of each charge on justification. (Cf. People v Rodriquez, 81 AD2d 513, 514.)
The defendant argues that the underlined portions of the supplemental instructions portrayed an objective standard. This offends the rule requiring a purely subjective charge. The People argue that a subjective test pertains only to the perceptions of a defendant but an objective test measures his reactions. Thus, they urge the court to adopt a hybrid rule. Upon oral argument, they expanded their hybrid concept by arguing for a subjective-objective test for the phrase "he reasonably believes” in assessing both the defendant’s perception and his reaction.
The first approach by the People is without merit. There is no distinction between a defendant’s perception of being threatened and his reaction to the threat. Each requires that he reasonably believe: He must reasonably believe that another person is about to commit a robbery, and he must reasonably believe that the deadly physical force he used was the extent of force necessary to defend himself. The objective test to determine the justification of a defendant’s reaction has been rejected in People v Powell (112 AD2d 450); People v Santiago (110 AD2d 569); People v Long (104 AD2d 902); People v Wagman (99 AD2d 519) and People v Desmond (93 AD2d 822), among recent cases.
The more difficult question is whether a hybrid test is applicable to determine what an actor "reasonably believes” in both his perception and his reaction. It is unnecessary to trace the history of the justification defense. As early as 2 NY 193 in Shorter v People, the Court of Appeals recognized the essential subjective essence of the justification defense. " '[I]t is not essential that an actual felony should be about to be committed in order to justify the killing. If the circumstances are such as that, after all reasonable caution, the party suspects that the felony is about to be immediately committed, *7 he will be justified.’ ” (2 NY2d, at p 199.) That court, thus, stressed the circumstances as they appeared even though they proved to be false.[4] (See also, People v Taylor, 177 NY 237, 245.)
The modern day Court of Appeals has put any controversy to rest in People v Miller (39 NY2d 543). There, the court held that proof of the victim’s prior acts of violence known to defendant was admissible because the crucial issue in assessing the justification claim is defendant’s state of mind. (Supra, at pp 548, 551.)
Nevertheless, the People rely on a case two volumes later in the New York Reports, People v Collice (41 NY2d 906, 907). There, the court affirmed a conviction where the trial court had rejected a request to charge the defense of justification at all. It held that "[o]n no view of the evidence” had justification been established. The court wrote that even if defendant believed he was threatened "his reactions were not those of a reasonable man acting in self-defense”. Though it was cited in Collice’s brief to the Court of Appeals, the memorandum of affirmance made no mention of People v Miller (supra).
In Collice (supra) the court was in no way receding from the subjective — defendant’s state of mind — test of Miller. It was simply applying the well-settled guide to appellate review, urged in the prosecutor’s brief to that court, that under no view of the evidence, considered in a light most favorable to defendant, was he entitled to a justification charge. (See, People v Stridiron, 33 NY2d 287, 292; People v Watts, 57 NY2d 299, 301, 302.) This is the unvarying interpretation given by every case subsequently citing Collice. (People v Figueroa, 111 AD2d 765, 766 [where the court varied the language from Collice, viz., "Defendant’s reactions were clearly not those of a man acting in self-defense”]; People v Pabon, 106 AD2d 587; People v Gutierrez, 105 AD2d 754; People v Alston, 104 AD2d 653; People v Jenkins, 93 AD2d 868; People v Frazier, 86 AD2d *8 557.) The Appellate Division authorities on which Goetz relies are, therefore, not undermined by People v Collice. Unlike Collice, which upholds the refusal to charge justification at all, these authorities address the content of justification charges[5] that have been rendered to trial juries.
The hybrid concept embraced by the People for interpreting the phrase "he reasonably believes” is virtually repudiated by some of the Appellate Division cases. (See, e.g., People v Santiago, 110 AD2d 569, 570, supra; People v Long, 104 AD2d 902, 903, supra; People v Wagman, 99 AD2d 519, 520, supra; and People v Desmond, 93 AD2d 822, 823, supra.) Nor does People v Casassa (49 NY2d 668, cert denied 449 US 842) lay a foundation for a hybrid test of the justification defense. Casassa scrutinized the affirmative, mitigating defense of extreme emotional disturbance.[6] The court rejected defendant’s construction of an entirely subjective measurement for this affirmative defense. Instead, it concluded that a two-part test is described by the statute: (1) whether in fact defendant acted under extreme emotional disturbance — a subjective matter— and (2) whether there was a reasonable explanation or excuse for this disturbance — an objective test applied "by viewing the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for his emotional disturbance was reasonable” (49 NY2d, at p 679). This analysis was motivated in large measure by the nature of this affirmative defense: "[W]e believe * * * the Legislature intended * * * to allow the *9 finder of fact the discretionary power to mitigate the penalty when presented with a situation which, under the circumstances, appears to them to have caused an understandable weakness in one of their fellows.” (Supra, at p 680; emphasis added.)
By contrast, justification is an ordinary defense which the People must disprove beyond a reasonable doubt. (Penal Law § 25.00 [1].) Moreover, the statutory language of the affirmative defense of extreme emotional disturbance accomplishes just what is omitted in the language of the ordinary defense of justification. In the former, reasonableness is determined from the viewpoint of a person in defendant’s situation. This differs from language resting on defendant’s own viewpoint as we find repeatedly formulated in Penal Law § 35.15 ("He reasonably believes”; emphasis added). This linguistic shift demonstrates how the justification charge, placing the ordinary reasonable man into defendant’s situation or shoes, is appropriately condemned by the many cases that have reviewed it. If the Legislature had intended for the justification defense what the People at bar are urging, it had the opportunity to incorporate in Penal Law § 35.15 the language it employed in Penal Law § 125.25 (1) (a). (See also the affirmative defense of duress in Penal Law § 40.00 [1] where, unlike justification, the language steps away from the defendant’s state of mind in favor of "a person of reasonable firmness in his situation”.)
The court is, nonetheless, concerned with the grand juror’s curiosity about the concept of reasonableness in the justification context. After all, the word "reasonable” implies some kind of standard. The inquiring grand juror was groping for a description of it. He or she seemed reluctant to attach the label "reasonable” to the beliefs of a person acting irrationally or delusionally. Where Casassa (supra) speaks of a reasonable explanation or excuse for the emotional disturbance, justification authorities mention a defendant’s reasonable ground to believe (Shorter v People, 2 NY 193, supra), or reasonable grounds of apprehension (Brown v United States, 256 US 335, 342) or what defendant had a right to believe under the circumstances (People v Calvin of Oakknoll, 110 AD2d 1044, 1045). In People v Rodawald (177 NY 408, 423), the court focused on defendant’s good faith and honest belief that his life was in danger. In the defendant’s brief to the Appellate Division in People v Santiago (supra), the argument was advanced that "he reasonably believes” means that "the actor honestly believes himself to be in imminent danger of serious *10 physical harm and that there be a reasonable basis for that belief.” The prosecutor in that case phrased it "in terms of of [sic] what is an acceptable belief to society under the circumstances” and not on the basis of "purely fantastic [belief] * * * unsupported by relevant circumstances.” That prosecutor went on, however, to argue that this test may only be made by replacing defendant with the ordinary reasonable man. The Santiago court rejected this conclusion. In People v Long (supra) the charge (not revealed in the decision) included the instruction that a belief "founded upon pure imagination, unsupported by relevant circumstances * * * is not the reasonable belief contemplated by the penal law.”[7]
We have in these cases formulations of reasonableness in what the defendant actually believes. These formulations all describe the defendant’s own state of mind which is the crucial issue. (People v Miller, 39 NY2d 543, 551, supra.) As case after case has demonstrated, however, the application of these tests does not countenance the substitution of the mind of the ordinary reasonable person or reasonable juror. The second Grand Jury in the case at hand was instructed otherwise, and this was error.
What is the effect of this error? People v Calbud, Inc. (49 NY2d 389) teaches us that a Grand Jury need not be charged as punctiliously as the petit jury. Yet, this does not license obscure or erroneous instructions. More to the point, though, is footnote 2 in Calbud (supra, at p 395). There the court cautioned that a disapproval of an imprecise charge might stem from erroneous or misleading instructions in response to a pointed question from the Grand Jury. This footnote squarely embraces the situation at bar. Moreover, the circumstance that the instruction came at the very conclusion of the presentation gave "a predominant trend to [the grand jurors’] thoughts and * * * led them to enter upon their deliberations with a false test.” (People v Lumsden, 201 NY 264, 269-270.) Finally, the instruction went to the very heart of the case, and the error influenced the essential character of that instruction. Consequently, the error impaired the integrity of the second Grand Jury and prejudiced defendant.
*11 B. People v Pelchat
After the second Grand Jury indicted defendant for the more serious crimes, additional information came to light. For example, on November 27, 1985, Police Officer Peter Smith reported that Canty, while still in the subway car where he had been shot, indicated that "we were going to rob” Goetz. In a press interview in November, the paralyzed Darryl Cabey, the last youth to be shot, remembered that his companions were bent on robbing Goetz. Relying on People v Pelchat (62 NY2d 97), defendant contends, in an oral expansion of his motion, that the District Attorney should have moved to resubmit the counts handed down by the second Grand Jury. He argues that these later developments demonstrate that the youths who testified committed perjury before the second Grand Jury. Indeed, he implies that these recent developments conspire with the allegedly prior inconsistent statements of the youths who testified, and the statements of like tenor taken from those who did not testify to mandate a representation.[8]
In People v Pelchat (supra), the officer who testified in the Grand Jury had misunderstood the presenting prosecutor’s question. The answer was the only evidence connecting Pelchat to the crime. Later, on cross-examination of the same witness at the trial of codefendants, it became clear that the officer had not intended to implicate Pelchat. The Court of Appeals held that the District Attorney, knowing of this infirmity in his case against Pelchat, should not have stood by while Pelchat pleaded guilty. Instead, the prosecutor should have sought "a superseding indictment on proper evidence or * * * disclose[d] the facts and [sought] permission from the court to resubmit the case (see CPL 200.80, 210.20, subd 4).” (62 NY2d 97, 107, supra.)
Naturally, the Pelchat Grand Jury would not have had legally sufficient evidence to indict had they understood the intended testimony of the officer. By contrast, there would have existed at bar legally sufficient evidence to indict Goetz on the more serious crimes without testimony from any of the youths. The case at bar is placed in a unique light, however, because the major difference between the first presentation, *12 where the Grand Jury dismissed the more serious charges, and the second where it voted to indict on those charges, was the testimony from the two youths. If that testimony, going to the heart of the justification defense, was perjured, the integrity of the second Grand Jury was severely undermined, to say the least. Though this technical defect may differ from Pelchat (supra) the policy to be vindicated is identical.[9]
For these reasons, as well, the indictment voted by the second Grand Jury should be dismissed, except for the count charging reckless endangerment, first degree. Justification is not a defense to this charge. (Cf. People v McManus, 108 AD2d 474; but see, People v Boute, 111 AD2d 398, 399.)
C. Limited Waiver
The remaining argument in support of dismissal is that the refusal to permit defendant to testify under a limited waiver impaired the integrity of the second Grand Jury. He offered to testify under a waiver of immunity as to the events of December 22 and December 30, 1984, because he wanted to avoid incriminating himself as to collateral charges that were not, in any event, part of the scope of the order for resubmission pursuant to CPL 190.75 (3). (Cf. People v Coppola, 123 Misc 2d 31, 36.) Defendant’s attorneys were particularly concerned that questions be avoided about the purchase by Goetz of additional weapons for some friends. As a result of the prosecutor’s refusal to limit his waiver of immunity, defendant was not heard. Consequently, he argues, the second Grand Jury heard a one-sided version of the events from one or more of the victims who received full immunity despite their prior criminal history. This, he says, undermined the integrity of the second Grand Jury.
The People misconstrue defendant’s argument by referring to the five-day limitation in CPL 190.50 (5) (c) governing the defendant’s statutory right to testify. Rather, defendant is raising a question of fairness in the exercise of the prosecutor’s discretion to confer immunity. This discretion is reviewable for abuse. (People v Adams, 53 NY2d 241, 247.) Upon *13 such review, this court is unpersuaded that the District Attorney abused his discretion (CPL 190.45 [4]) in rejecting defendant’s offer of a limited waiver. It was ill-tailored to accomplish its purpose. Its overbreadth would have created a minefield for the Assistant District Attorney who would have been precluded from inquiring into many aspects of the events subsequent to the subway shootings but clearly relevant to them.
With the proffer of too tight-fitting a waiver the defendant himself is responsible for his nonappearance. Thus, there is no cause to dismiss because the prosecutor rejected this waiver.
III. RESUBMISSION
It is familiar to all by now that when a Grand Jury dismisses a charge it may be resubmitted again pursuant to court order. If the Grand Jury dismisses again, it may not be resubmitted. (CPL 190.75 [3].) On the other hand, when the court dismisses, as in the case at bar on motion of the defendant, discretion remains for the court to allow resubmission without limitation as to frequency. (CPL 210.20 [4].) Goetz argues that since he was vindicated by the first Grand Jury on the charges handed down by the second, this court should withhold discretion and forbid a third presentation. He analogizes to principles of double jeopardy. This argument, if adopted, accomplishes what the Legislature refrained from doing. It would incorporate the single resubmission limitation of CPL 190.75 (3) into CPL 210.20 (4). The latter subdivision, however, stands in stark contrast to the former; CPL 210.20 (4) has no numerical limitation.
Neither does the court perceive any reason on the merits to refuse authority to resubmit. There is not a murmur of any bad faith in the error of the assistant on the justification charge. The very length of discussion in this opinion and in the various memoranda of the parties reveals the difficulties presented by this area of the law. Moreover, dismissal on the Pelchat branch of the omnibus motion is divorced from any activity by the People in the second Grand Jury. For example, the prosecutor was as surprised as the defense by the revelation in November by Officer Smith. (See, p 11, supra.)
Finally, neither the goal of justice nor the appearance of justice being done will be accomplished by refusing leave to resubmit. This case, for all concerned, including defendant, cries out for adjudication, not according to popular opinions, *14 emotional reactions or political philosophy, but according to the evidence, properly and fairly admitted before the appropriate tribunal, and adjudicated in obeisance to the rules of law. Indeed, observance of rules of law is what makes our society stable; adoption and enforcement of these rules pursuant to our Constitutions is what keeps us free.
Thus, discretion will be exercised to permit resubmission of the counts being dismissed. Since this is an exercise of discretion it may be conditioned in an appropriate case. The condition in this case is that defendant be accorded an opportunity to testify under a limited waiver. (Cf. People v Scott, 124 Misc 2d 357, 361-362.) This waiver will not be as broad as the one Goetz tendered in March. Rather, it will be tailored to meet his sole concern that he not be interrogated about his purchases of handguns for his friends. On all other subjects he will waive immunity.

. Penal Law § 35.15 as applicable to these instructions reads:
"1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself * * * from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person * * *
"2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:
"(a) He reasonably believes that such other person is using or about to use *4 deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating * * * or
"(b) He reasonably believes that such other person is committing or attempting to commit a * * * robbery”. (Emphasis added.)
The underscored portions of this statute are the focus of the intense debate between the parties regarding the correctness of the prosecutor’s final instructions on this topic.

. It is paradoxical to speak in terms of error in a charge that should not have been given in the first place. (Shorter v People, 2 NY 193; People v Stridiron, 33 NY2d 287, 292.) After all, there was no evidence that any of the youths was about to use deadly physical force on defendant. In this circumstance, the entire charge was a benefit to defendant. (Cf. People v Mungin, 106 AD2d 519.) Thus, the error in the passage on retreat (People v La Susa, 87 AD2d 578, 579) is somewhat academic. It receives attention in this opinion because it sets the stage for a deemphasis of the subjective test in the second portion of instructions on justification under Penal Law § 35.15 (2) (b).

. Here again the assistant omitted the statutory requirement that the defendant’s perception be reasonable. This, of course, was to defendant’s benefit. (See, p 4, supra.)

. Compatibly, the United States Supreme Court in Brown v United States (256 US 335, 343) wrote: "Many respectable writers agree that if a man reasonably believes that he is in immediate danger of death or grievous bodily harm from his assailant he may stand his ground and that if he kills him he has not exceeded the bounds of lawful self-defense * * * Detached reflection cannot be demanded in the presence of an uplifted knife. Therefore in this Court, at least, it is not a condition of immunity that one in that situation should pause to consider whether a reasonable man might not think it possible to fly with safety or to disable his assailant rather than to kill him.”

. Instructive also is a comparison of the language of the charge Goetz now attacks ("You should consider whether the defendant’s conduct was that of a reasonable man in the defendant’s situation”), with the language of the charge given to the first Grand Jury ("You must examine the circumstances from defendant’s viewpoint as it appeared reasonably to him”). In contrast to the charge in the first Grand Jury that defendant does not in fact have to turn out to be correct, the charge in the second Grand Jury omitted any similar language. This reveals another aspect of the reduced emphasis on the subjective state of defendant’s mind in the second Grand Jury. Remember, the first Grand Jury voted no true bill on the counts as to which justification was charged.

. This defense to a charge of intentional murder applies where "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be.” (Penal Law § 125.25 [1] [a].)

. The New York Defender Digest, Inc. publishes "Defendant’s Request to Charge — Justification.” It offers the following language: "The test the law requires you to use in deciding what this defendant was reasonably justified in believing is what this defendant himself, subjectively, had reason to believe — not what yourself or some other person might reasonably believe.”

. Of course, it is basic that out-of-court statements, even if exculpatory of Goetz, by witnesses who never testified, would be inadmissible unless they qualify as a hearsay exception, and prior inconsistent statements of the youths who did testify may not be used as evidence-in-chief. (Richardson, Evidence § 501 [10th ed 1973].)

. Judge Simons, writing for the unanimous court in People v Pelchat, said, in the context of that case: "The cardinal purpose of the Grand Jury, however, is to act as a shield against prosecutorial excesses and this protection is destroyed and the integrity of the criminal justice system impaired if a prosecution may proceed even after the District Attorney learns that jurisdiction is based upon an empty indictment.” (62 NY2d 97, 108.)