OPINION OF THE COURT
Richard Lee Price, J.
On October 8, 1996, defendant, Pablo Brea and Norberto Peets were arraigned on a felony complaint charging them with attempted murder in the first and second degrees, attempted robbery in the first degree and other related charges with respect to an incident that occurred on September 29, 1996 (hereinafter the September attempted murder). The facts in support of the charges in the felony complaint were based upon information from Miguel Ramos that on September 29, 1996, he himself placed $20 on top of the counter (of a fried chicken store), that one of the three codefendants grabbed the money and all three ran out. When Ramos and his two companions chased the defendants, defendant Peets fired shots at Ramos and one of his companions and defendant Brea pistol-whipped his other companion. Defendant Peets also fired shots at police officers who responded to the scene.
At the same time the three defendants were also arraigned on charges that they attempted to rob a Kentucky Fried Chicken store at gunpoint on October 6, 1996, after pushing their way into the store (hereinafter the October attempted *797 robbery). The People served a CPL 190.50 notice saying that if the defendants wish to testify they may do so on October 11, 1996. All defendants indicated that they would testify before the Grand Jury as to both matters and defendant served a written CPL 190.50 notice to that effect.
Defendant then moved before the Arraignment Court that the People be required to present these incidents before two separate Grand Juries asserting that these incidents occurred at separate locations, have separate complaining witnesses and have dissimilar alleged facts and that defendant may have distinct testimony and different witnesses, evidence and defenses as to each. He asserted that he would be heavily prejudiced if the same Grand Jury panel heard both of these incidents when trying to present different defenses. Codefendants joined in this application and the People opposed it. The Arraignment Court stated the following: "I am not going to rule on this application. It’s been noted. Counsel’s request is noted by the People. Just make a note to whoever is actually presenting the case to the [szc] contact both counsel should they decide to present it to the same Panel.” (Transcript of Oct. 8, 1996, at 14.)
On October 10, 1996, Miguel Ramos and his two companions testified with respect to the September attempted murder before the D Panel of the Grand Jury. Their testimony before the Grand Jury was notably different from the facts in the felony complaint. Ramos testified in the Grand Jury that on September 29, 1996 he was in the Sombrero bar with his two companions. He exited the bar to say goodbye to his companions (who had apparently stepped outside) and go home, when he saw two black men fighting with two Hispanic men in front of a hardware store. They were punching one another and one of the Hispanic men was hitting one of the black men with a bat. Then two black men came down from the train station and one started shooting. At one point, when Ramos began to say something about the black guys first having robbed some money from the Hispanic guy first, the prosecutor asked the witness to confine his testimony to what he saw. The remainder of his testimony was consistent with the remaining facts in the felony complaint and his companions’ testimony in the Grand Jury was consistent with his testimony.
On the morning of October 11, 1996, a civilian witness testified before the same panel of the Grand Jury with respect to the October attempted robbery. That same morning, the prosecutor spoke to defense counsel and informed him that *798 both cases were presented to the same panel because both stemmed from attempted robberies of chicken stores. She went on to tell defense counsel that she was not going to vote any charges against the defendant on the September attempted murder only because the complainants pertaining to that charge did not appear for the Grand Jury. Later that day, before Judge Robert Torres, the People indicated that the cases had been partially presented to the D Panel of the Grand Jury and that they were in a position to vote felony charges as to each defendant on each case. All defendants waived CPL 180.80 to October 17, 1996, and the case was adjourned to that date. Defendant moved to have the bail reduced on the September attempted murder from $7,500 to $1. The basis of the application was the People’s stated intention not to vote charges with respect to the September attempted murder as to the defendant. According to the People, their witnesses established that the defendant was present at the September attempted murder, however, they did not establish anything more than his mere presence at the scene. Although the People had no intention of dismissing the charges stemming from the September attempted murder, they did not object to the reduction of bail to $1. All defendants were served with a CPL 190.50 notice for October 17, 1996.
On October 17, 1996, before Judge Torres, the People indicated that the case was fully presented to the D Panel of the Grand Jury and indicated that the defendants could testify before the Grand Jury at noon. Both codefendants indicated that they would testify. Defense counsel indicated to the court that he had asked the People to give the defendant a restricted waiver of immunity as to the October attempted robbery. Defendant argued that it would be unfair to require him to waive immunity as to the September attempted murder. Defendant asserted that the People are required to make a fair presentation, and that he should not be punished for wanting to testify as to one matter and not the other. Defendant expressed his well-founded concern that if he testified as to the October attempted robbery, he would not have immunity as to the September attempted murder. A Grand Jury hearing testimony that defendant was present on that September day with the same codefendants as on the October attempted robbery, were likely to ask him about the September attempted murder, and he would be obligated to answer. As such, the prosecution had put him in an unfair situation where if he did testify before the Grand Jury, he would be subjected to questioning regard *799 ing the attempted murder of a police officer (a more serious crime) on which he would otherwise not be indicted, or, in the alternative, give up his right to testify in the Grand Jury altogether. The People refused to grant the defendant a limited waiver of immunity because they suspected that he was involved in the September attempted murder and they did not want to open up the possibility that he could go into the Grand Jury and immunize himself from prosecution with respect to that incident. Accordingly, defendant elected not to testify before the Grand Jury stating that his sole reason was the People’s refusal to grant him a limited waiver of immunity.
Defendant did not testify before the Grand Jury and thereafter brought this motion to dismiss the indictment pursuant to CPL 190.50 (c); 210.20 (1) (c) and 210.35 (4).
Conclusions of Law
I. Joinder
Joinder of offenses is governed by CPL 200.20 which permits joinder when offenses "are defined by the same or similar statutory provisions and consequently are the same or similar in law” (CPL 200.20 [2] [c]). The People assert that because both cases involved attempted robberies of chicken stores, the cases are properly joined. It should first be noted that if the September attempted murder in fact arose out of a robbery at a chicken store, that is where the similarity between these two cases ends. The October attempted robbery involved an unsuccessful attempt by the defendants to forcibly steal property from the store itself by forcing their way through the door and demanding money at gunpoint. By contrast, the September attempted murder was originally alleged to have stemmed from one of the defendants grabbing money from Miguel Ramos, a customer at a store, and all three defendants fleeing. It remains unclear why the felony complaint charges attempted robbery when the sworn statement appears to make out a completed robbery.
It seems apparent to this court that once Ramos and his two companions went into the Grand Jury on October 10, 1996, and told a different story from the one they originally told to Detective Joseph Nealon, the prosecutor knew with certainty that this incident did not arise out of a robbery at a chicken store. From October 10, 1996 forward the prosecutor’s steadfast insistence on the existence of a robbery was, quite frankly, less than candid. Even assuming there was a robbery, the People *800 knew then that they had no intention of presenting robbery charges with respect to the September incident. As such, prior to the presentation of evidence on October 11, 1996 from the complainant in the October attempted robbery, the People knew that the two cases were no longer defined by any of the same or similar statutory provisions, and were no longer joined pursuant to CPL 200.20 (2) (c). Yet the People nevertheless elected to present both cases in one presentation, and they did so without first notifying the defendants as mandated by the Arraignment Court.
Assuming, arguendo, that the joinder of the two cases was proper, such a joinder would require severance of the defendant from his codefendants. CPL 200.40 provides that defendants may be jointly charged when they are all charged with every offense alleged therein, all offenses are based upon a common scheme or plan, or all offenses are based upon the same criminal transaction (CPL 200.40 [1] [a], [b], [c]). As defendant was only going to be charged with respect to the October attempted robbery, once the People decided to indict both incidents together, defendant was not properly joined to his codefendants.
A defendant is not denied his statutory right to testify before the Grand Jury by the prosecutor’s announced intention to present joined charges to the same Grand Jury panel (People v Panzardi, 209 AD2d 1017 [4th Dept 1994]; People v Simon, 187 AD2d 740 [2d Dept 1992]; Matter of Gold, v Booth, 79 AD2d 1013 [2d Dept 1981]). Although the remedy for improper joinder is a motion for severance before the trial court (see, CPL 200.20 [3]), and the Criminal Procedure Law does not explicitly provide for consideration of a motion for severance before the Grand Jury, the court, as colegal advisor with the District Attorney pursuant to CPL 190.25 (6), has supervisory jurisdiction over the Grand Jury (see, Matter of Morgenthau v Altman, 58 NY2d 1057, 1059 [1983] [holding that the order in which witnesses are presented is a matter of procedure within the supervisory jurisdiction of the court, and upholding order requiring that the People’s witnesses be presented to the Grand Jury before the defendant testifies]). The authority to consider a motion to sever Grand Jury presentations is consistent with the court’s advisory power, and by failing to inform defense counsel that the cases were being presented together, the People usurped the court’s authority to consider the issue.
Even assuming courts lack the authority to consider preGrand Jury severance motions, I nevertheless find that a *801 consideration of the totality of the circumstances in this case leads to the conclusion that defendant was deprived of a meaningful opportunity to testify before the Grand Jury, and that such an opportunity could have easily been afforded him.
I now turn to a discussion of the interrelated issues of a defendant’s right to testify before the Grand Jury and waiver of Grand Jury immunity.
II. Immunity and Defendant’s Right To Testify Before the Grand Jury
"A witness who gives evidence in a grand jury proceeding receives immunity unless:
"[h]e has effectively waived such immunity * * * or
"[s]uch evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive” (CPL 190.40 [2] [a], [b]).
"[U]pon giving an answer responsive to any inquiry that has any bearing on the incident, [a witness] receives automatic transactional immunity and can never thereafter be prosecuted for his or her criminal responsibility for that incident” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 190.40, at 259). "[A] witness may even receive transactional immunity for a crime totally unrelated to the one under investigation by responding to a simple question regarding a seemingly innocuous fact — i.e., the witness’ occupation” (id., at 260, citing People v McFarlan, 42 NY2d 896 [1977]), and the prosecutor’s burden to establish nonresponsiveness is a high one (see, Matter of Brockway v Monroe, 59 NY2d 179, 189 [1983]).
When a criminal charge is pending against a defendant, s/he has the right to appear before the Grand Jury on his/her own behalf if "prior to the filing of any indictment * * * he serves upon the district attorney of the county a written notice making such request and stating an address to which communications may be sent” (CPL 190.50 [5] [a]). Upon appearing at such time and place, and upon signing and submitting a waiver of immunity pursuant to CPL 190.45, such person must be permitted to testify before the Grand Jury and to give any relevant and competent evidence concerning the case under consideration. "By waiving the right to immunity, a testifying defendant before the Grand Jury necessarily gives up the Fifth Amendment privilege against self-incrimination” (People v Smith, 87 NY2d 715, 719 [1996]), and is subject to examination *802 by the People (CPL 190.50 [5] [b]). Any indictment obtained in violation of these provisions is invalid and, upon a timely motion by a defendant, must be dismissed (CPL 190.50 [c]). CPL 190.45 defines immunity and reads in pertinent part as follows:
"1. A waiver of immunity is a written instrument subscribed by a person who is or is about to become a witness in a grand jury proceeding, stipulating that he waives his privilege against self-incrimination and any possible or prospective immunity to which he would otherwise become entitled, pursuant to section 190.40, as a result of giving evidence in such proceeding * * *
"4. If a grand jury witness subscribes and swears to a waiver of immunity upon a written agreement with the district attorney that the interrogation will be limited to certain specified subjects, matters or areas of conduct, and if after the commencement of his testimony he is interrogated and testifies concerning another subject, matter or area of conduct not included in such written agreement, he receives immunity with respect to any further testimony which he may give concerning such other subject, matter or area of conduct and the waiver of immunity is to that extent ineffective.”
The right to testify before the Grand Jury is not absolute and may only be exercised by a defendant who is willing to waive immunity. A defendant who signs a general waiver must be permitted to testify. The grant of a limited waiver of immunity requires prosecutorial consent (People v Griffin, 135 Misc 2d 775, 778). If defendant signs a limited waiver of immunity, he waives his immunity only as to the matter or matters to which it is limited, but does not waive immunity as to any other matters about which he is questioned. The granting of a limited waiver of immunity provides many pitfalls for the People and their reluctance to grant such a waiver is understandable. This point was made in People v Scott (124 Misc 2d 357, 361): "Case law abounds with instances of unintended immunity conferred on a witness when responsively answering questions before the Grand Jury. Sometimes even the most innocuous questioning of a witness has been found to be responsive, substantial and material to a criminal charge. A prosecutor’s reluctance to permit a defendant or potential defendant from testifying before a Grand Jury without a waiver of immunity is easily understandable when one examines decisions such as the following [citations omitted]”. Of particular concern is the situation where, as in the case at bar, the People have reason to believe that the defendant was a participant in unrelated crim *803 inal conduct. Furthermore, only if the People can overcome the high burden of establishing that an answer was nonresponsive may they overcome any unintended transactional immunity.
In People v Scott (124 Misc 2d 357, supra), defendant was charged with grand larceny and an attempted assault that occurred 10 days apart. Defendant asserted that he wanted to exercise his right to remain silent on the grand larceny but had important information with respect to the attempted assault. The District Attorney agreed to present the case under two separate presentations but the defendant would have to testify under a general waiver of immunity. Then the prosecutor agreed not to question the defendant concerning the grand larceny unless the defendant opened the door to such questioning during his testimony. The court opined that requiring the defendant to sign a general waiver as a precondition for his testimony would raise an additional issue of coercion and involuntariness of the waiver. As such the court dismissed the indictment and granted the defendant the right to testify under a limited waiver of immunity.
I respectfully disagree with the holding in Scott (supra) because that court placed unnecessary reliance on its belief that under an unrestricted waiver the defendant would be forced to yield his privilege against self-incrimination with respect to the grand larceny charge and would face contempt charges if he refused to answer questions as to that charge before the Grand Jury considering the assault charge. "Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him” (CPL 190.40 [1]). However, "nothing in the statutory language indicates that the Legislature contemplated the waiver of the privilege against self-incrimination to exceed the scope of the accused’s right to testify. As specified by CPL 190.50 (5), a prospective defendant’s right to testify encompasses only those matters relevant to the case before the Grand Jury” (People v Smith, 87 NY2d 715, 719 [1996], supra [holding that a defendant who signs a general waiver does not waive the privilege against self-incrimination as to unrelated pending criminal charges that are being introduced on the issue of credibility], citing People v Smith, 84 NY2d 998, 1001; cf., People v Griffin, 135 Misc 2d 775, 777 [Sup Ct, Kings County 1987, Goldman, J.], supra [declining to follow People v Scott]). In People v Griffin the court noted that "[b]y voluntarily testifying [in the Grand *804 Jury], defendant waives the Fifth Amendment privilege as to matters within the bounds of appropriate cross-examination” (People v Griffin, 135 Misc 2d, at 777, n 3 [citations omitted]; see, People v Vargas, 150 Misc 2d 1053). As the defendant in Scott was testifying in front of a Grand Jury hearing only the attempted assault charges, testimony with respect to the grand larceny, an unrelated pending charge, was not relevant to the assault case before the Grand Jury and defendant could not be required to answer such questions unless his own testimony opened the door (see, CPL 190.40 [2] [a], [b]).
In People v Smith (87 NY2d 715, supra) the Court of Appeals went to great lengths to emphasize that although the right to testify before the Grand Jury is statutory, it will be afforded a very high level of protection: "[R]equiring a prospective defendant wishing to testify to forego the Fifth Amendment protection and suffer incrimination as to unrelated pending charges would place a high constitutional price on the right to testify before the Grand Jury. This right, albeit statutory, is significant”. (People v Smith, 87 NY2d 715, 720, citing People v Evans, 79 NY2d 407, 413-414.) "CPL 190.50 (5) 'protects] defendants’ valued statutory option to appear at this critical accusatory stage to offer testimony that may affect the Grand Jury’s consideration of the otherwise exclusive, ex parte presentment of evidence by the prosecution.’ ” (People v Smith, at 720-721, quoting People v Evans, 79 NY2d 407, 413-414.) "To guard against abridgement of this 'valued’ right, we have further ordered that it 'must be scrupulously protected’ ” (People v Smith, at 721, quoting People v Corrigan, 80 NY2d 326, 332). Conditioning a defendant’s testimony on giving up the privilege against self-incrimination with respect to an (unrelated) pending criminal charge "would undoubtedly 'exert[ ] an undeniable chilling effect upon a real "choice” whether to testify in one’s own behalf ” (People v Smith, 87 NY2d, at 721, quoting People v Betts, 70 NY2d 289, 292).
For a waiver to be effective it must be voluntary and not induced by improper means (People v Scott, 124 Misc 2d, at 364, supra, citing Gardner v Broderick, 392 US 273; People v Guidarelli, 22 AD2d 336). A prosecutor’s decision with respect to the grant of immunity is reviewable for abuse of prosecutorial discretion (People v Goetz, 131 Misc 2d 1; see contra, People v Griffin, 135 Misc 2d, at 778, supra).
Defendant contends that if he signed a general waiver, the waiver would have been coerced as to the September attempted murder incident by the single presentation of nonjoined offen *805 ses and the People’s refusal to allowing him to sign a limited waiver. I agree.
"Coercion has been found, as a violation of CPL 190.50, when the People have refused to confer upon a defendant a limited waiver of immunity or fashion some compromise when pending unrelated charges are to be the subject of inquiry” (People v Devone, 163 Misc 2d 581, 585 [Sup Ct, Kings County 1994, Gary, J.] [emphasis in original], citing People v Scott, 124 Misc 2d 357, supra; People v Griffin, 135 Misc 2d 775; People v Vargas, 150 Misc 2d 1053, supra; People v Betts, 70 NY2d 289, supra). In People v Vargas (150 Misc 2d 1053 [Sup Ct, Kings County 1991, Aiello, J.]) a single Grand Jury was considering charges as to two separate murder charges and a rape charge. Defendant wanted to testify as to only one of the murders. The prosecutor required the defendant to sign a waiver of immunity as to all three crimes but assured the defendant that he could give testimony on whatever subject he wished and cross-examination would be limited to that subject matter. Similar assurances were also given in People v Scott (124 Misc 2d 357) and People v Simon (187 AD2d 740 [2d Dept 1992], supra) to provide the defendant with a meaningful opportunity to testify before the Grand Jury while avoiding the risk that defendant would obtain transactional immunity as to other pending matters.
It is not the holding of this court that the People are required to allow the defendant to enter into a limited waiver of immunity simply because he wishes to testify about one pending charge and refrain from testifying about another. However, where reasonable compromises can be made, the People must act in good faith to effectuate where possible a defendant’s right to provide material evidence to the Grand Jury without the risk of self-incrimination as to other pending matters. It would have been appropriate for the People to present these cases in two separate Grand Jury presentations and they disregarded the Arraignment Court’s directive to afford the defendant the opportunity to so move. Alternatively, the People could have easily accommodated defendant’s right to testify before the Grand Jury and his Fifth Amendment right by assuring him that they would only examine him with respect to the October attempted robbery, and not the September attempted murder (see, People v Simon, 187 AD2d 740 [2d Dept 1992], supra; People v Vargas, 150 Misc 2d, at 1057, supra; People v Scott, 124 Misc 2d 357, supra). With both of these options available to the People, their failure to elect either one of *806 them, coupled with their failure to allow the defendant to testify under a limited waiver of immunity, had a coercive effect on the defendant’s consideration of whether or not to waive immunity and testify before the Grand Jury.
Accordingly, the indictment is dismissed as to this defendant. The People are granted leave to re-present the charges before a new Grand Jury.